## Haynes *vs*. Stevens.

The defendant conveyed to the plaintiff a tract of land, in fee, with a covenant
against incumbrances, and the plaintiff re-conveyed the same land to the de-
fendant in fee and in mortgage, with a similar covenant. At the date of each
of these deeds the land was incumbered by a highway which passed across
it. The plaintiff afterwards brought an action against a person who used
the highway, upon the representation of the defendant that no such highway
existed, and failed, judgment being recovered against him for costs. The
plaintiff then brought this suit upon the covenant that the land was free from
incumbrances.

*Held*, that the plaintiff was not estopped by the covenant against incumbran-
ces, in the mortgage, from maintaining this suit, and that it did not operate
by way of rebutter, to prevent circuity of action.

*Held*, also, that he was entitled to recover of the defendant the costs recovered
against him, by the person whom he sued for using the highway.

Covenant. The declaration alleged that the defendant,
on the 19th day of March, A. D. 1836, conveyed to the
plaintiff a tract of land, and covenanted that it was free from
incumbrances, and averred that it was in fact incumbered
by a highway, &c. &c.

The plaintiff offered evidence to show the conveyance
and covenant, and the existence of the highway.

The defendant then offered in evidence a mortgage deed
from the plaintiff to the defendant, of the same land, and
containing a similar covenant against incumbrances, and
bearing even date with the deed from the defendant to the
plaintiff. This deed was made to secure the payment of
several promissory notes, made by the plaintiff, and payable
to the defendant, and being part of the consideration for the
deed from the defendant to the plaintiff. Some of these
notes were unpaid, but all had been paid which had become
due.

The defendant contended that this deed constituted a bar
to the plaintiff's action; but the objection was overruled.

Soon after the conveyance to the plaintiff, a controversy
arose respecting the existence of a highway between him
and certain persons who claimed and exercised the right to

pass over the land. The plaintiff commenced a suit against one of them, and a trial was had upon the question, whether such a highway existed ; which resulted in a verdict and judgment against the plaintiff. Before the suit was brought the plaintiff asked the defendant whether there was any such highway, and the defendant denied its existence, and said that the plaintiff had as much right to fence across the land over which the travel was, as across any other part of the land.

The plaintiff contended that he should be allowed the expenses of that suit, as a part of the damages sustained by the breach of the covenant ; and the court instructed the jury that if the plaintiff was induced to commence the suit by the representations of the defendant that there was no highway, they might include the costs of that suit in the assessment of damages.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial.

*Joseph Bell*, for the plaintiff.

*Quincy*, for the defendant. The mortgage in fee passed to the mortgagee all the estate in the land, and in this case the plaintiff had only an instantaneous seizin. He could, therefore, have sustained no damage, and consequently can have no right of action. The plaintiff has covenanted that the land is free from incumbrances, and is now estopped to say that at the time of that covenant there was an incumbrance. The covenant should operate either as an estoppel, or by way of rebutter to prevent circuity of action. *Stinson* vs. *Sumner*, 9 *Mass.* 150 ; *Sprague* vs. *Baker*, 17 *Ditto* 586 ; *Marston* vs. *Hobbs*, 2 *Ditto* 439.

Gilchrist, J. In this case, Stevens, for a valuable consideration, conveyed land to Haynes in fee, with a covenant against incumbrances. Haynes immediately re-conveyed the

land to Stevens, in fee and in mortgage, to secure the payment of the purchase money, with a similar covenant against incumbrances. He now alleges that at the time he purchased the land of Stevens it was incumbered by a highway; and he says in substance that having paid Stevens a full consideration for the land, he should recover of him so much money as the land was diminished in value by the existence of the highway.

The highway was an incumbrance upon the land, and some one has sustained damage by its existence. Who has suffered the injury? Not the defendant, for he has received the full value of his land; but the plaintiff, who has paid such value. These facts being made out, his claim is a just one, and he should recover in this action, unless he is met by some objection to his claim arising out of the doctrine of estoppel.

It has been somewhat loosely said, in a general way, that estoppels are odious, and not favored by the law. Where the effect of the application of this principle is to prevent the truth from being ascertained, it is to be lamented: and, like every general rule which cannot be made to suit the equity of every particular case, otherwise it loses its distinctive character as a rule, it may sometimes, in individual instances, work an injustice. But this is not the object of the rule. The purpose of legal principles and axioms is not to shut out, but to bring forward and display the truth. That they do not always attain this end only proves that legal principles are not of universal application, and that they will not suit every imaginable state of facts. But it does not show that any given rule is not as good a one as could be devised, and that in general its application is not beneficial. So it is with the doctrine of estoppel. Its object is not to prevent the truth from being disclosed, but to hinder men from holding out false colors to the world; to compel them to adhere to what they have once said was the truth, and thereby to attain a certainty in legal proceedings which could

not exist, if men were permitted at pleasure to deny their positions.

It is justly remarked by Mr. Justice Wilde, in *Comstock* vs. *Smith*, 13 *Pick. R.* 121, that "the doctrine of estoppel aids much in the administration of justice; it becomes odious only when misunderstood and misapplied."

Estoppels have been defined by various writers and judges in different language, but substantially to the same effect. Coke defines estoppel to be so called "because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth." 1 *Inst.* 352, *a.*

Lord Coke is not to be understood as meaning that the party is precluded from alleging the truth, *as* truth, but because what he now assumes to be the truth is something inconsistent with his former position. This is the construction given by *Hargrave & Butler*, in note 306 to the first Institute, where it is said, that "no man ought to allege any thing but the truth for his defence; and what he has alleged once is to be presumed true, and therefore he ought not to contradict it."

Blackstone defines estoppel to be "where a man has done some act, or executed some deed, which estops or precludes him from averring or maintaining anything to the contrary." 3 *Comm.* 308.

In *Sinclair* vs. *Jackson*, 8 *Cowen* 586, estoppel is thus defined: "A man who admits a fact or deed in general terms, either by reciting it in an instrument executed by him, or by acting under it, shall not be received to deny its existence."

Mr. Justice Putnam, in the case of *Flagg* vs. *Mann*, 14 *Pick.* 481, says, "the reason which governs estoppels is, that after a man has by his own deed or act, *in pais,* admitted a fact to be true, he shall not be permitted to contradict it. This is a necessary rule, which is constantly enforced in the course of judicial inquiries. Matters which have been alleged or admitted by a party to be true, shall not be by him disproved."

An estoppel, therefore, from these definitions, is, in substance, an admission made by the party, in relation to the subject matter; and, having admitted the fact, he cannot controvert it, but is bound by the admission.

How far, then, is the covenant against incumbrances, in the deed of mortgage, an admission *that there was no incumbrance* when the defendant executed his deed to the plaintiff?

The plaintiff's covenant is a direct allegation that there was no incumbrance when he made his deed; but it is no *admission* that there was no incumbrance when the defendant made *his* deed. How does this covenant estop him from showing that there was an incumbrance when the defendant conveyed? It would not estop him from showing that there was no incumbrance at the date of his own deed, in a suit against him upon this covenant. It does not logically follow that there was no incumbrance when the defendant conveyed, from the fact that there was no incumbrance when the plaintiff re-conveyed. For some purposes these deeds make one transaction. The seizin was instantaneous, so far as to prevent the wife of the plaintiff from taking her dower; but the seizin was effectual for all other purposes. The deeds were different and independent instruments, and executed for different purposes; and we see not how the covenants in the two deeds have any necessary connection with each other. The defendant's deed must have preceded the plaintiff's deed. A warranty of title by the plaintiff does not prove that the defendant had title when he conveyed; for the plaintiff might then, or immediately after, have purchased in an opposing title, or removed an incumbrance. The fact that the plaintiff had a title when he thus re-conveyed, is perfectly consistent with the fact that the defendant had not a title when he conveyed to the plaintiff. Could it be said, if the defendant had mortgaged the land, and then conveyed to the plaintiff, who mortgaged to the defendant, and then the plaintiff had extinguished the first mortgage, that the

plaintiff should not recover of the defendant the sum he had thus paid, because his mortgage contained a covenant against incumbrances? True, he covenants against incumbrances, but it is against those of his own creation, and not such as the defendant may have charged upon the land.

We do not perceive, therefore, that the plaintiff can, by any application of the doctrine of estoppel, be precluded by his covenant from maintaining this action, for it is not inconsistent with the plaintiff's covenant to show that the land was incumbered when it was conveyed to him.

It is said that the plaintiff's covenant may operate by way of rebutter in this suit to prevent circuity of action. Where there is no circuity of action there is no rebutter. Circuity of action is where a recovery in the first suit alone gives rise to the second. 4 *Dane's Abr.* 495; *Co. Litt.* 265, *a,* 378, 384, 386; *Bates* vs. *Norcross,* 17 *Mass.* 14.

In order that the covenant should operate by way of rebutter, it must appear that if the plaintiff should recover in this suit, the defendant might thereupon recover the same amount of him in a suit on his covenant.

But on what ground could the defendant recover of the plaintiff? The defendant *sold* the land; the plaintiff has only *pledged* it. For the sale, the defendant received a consideration. If his title was not perfect, he is bound to indemnify. It is he, and not the defendant, who is answerable for all defects and incumbrances which existed at the time of his deed. The seller, and not the purchaser, is bound to make good all deficiencies in the quality and title of the thing sold. If the purchaser instantly pledges the property to him, he pledges only what he has received from him, and is answerable for no defect in the property which existed before the sale. Were it otherwise, then if the defendant, before his conveyance, had mortgaged the land, he might, on this principle, recover the amount of that mortgage of the plaintiff; and if the plaintiff had been forced to discharge such mortgage, he could not recover the sum paid, of the de-

fendant. If the defendant had been compelled to pay the amount of the mortgage, he could recover the amount of the plaintiff, although the latter had paid him the full value of the land, and he could call on the plaintiff for damages on account of this very highway, as the covenant of the plaintiff would be broken as soon as it was made.

In the case of *Watts* vs. *Wellman*, 2 *N. H. Rep.* 458, A. mortgaged land to B., and afterwards, in consideration that C. agreed to discharge the mortgage, conveyed a part of the same land to C., with a covenant that it was free from incumbrances. C. brought an action on this covenant; but it was held, that as C. had agreed to discharge the mortgage to B., its existence was, as to him, no incumbrance. The court say, that the case is the same in principle as if the defendant had conveyed the same parcel to B. with a similar covenant, in satisfaction of B.'s debt, and B. had brought an action on the covenant, and set out his mortgage as a breach of it.

The case of *Hubbard* vs. *Norton*, 10 *Conn. R.* 422, is precisely similar in its facts to the one before us. There A. conveyed to B., with a covenant against incumbrances, and B. reconveyed to A. in mortgage, with a similar covenant. In a suit on this covenant by B., on account of a highway over the land, it was held that the covenant in the mortgage did not estop the plaintiff, and did not operate by way of rebutter, to prevent circuity of action. The reasoning of the court proceeds in part on the position that the defendant's covenant was a personal one, and was broken as soon as made; that it was then a chose in action, and not assignable, and consequently was not assigned to the defendant by the mortgage. To this effect are the cases of *Mitchell* vs. *Hazen*, 4 *Conn.* 496; *Mitchell* vs. *Warner*, 5 *Ditto* 497; and *Lockwood* vs. *Sturdevant*, 6 *Ditto* 374, 384. Chancellor Kent has given this doctrine the sanction of his opinion— 4 *Kent's Com.* 471. He states that the covenants of seizin also, and of a right to convey after a breach, do not run with the land, and says that the reasoning of the court in *Kingdon*

vs. *Nottle*, 1 *M. & S.* 355, and 4 *Ditto* 53, is too refined to
be sound. It was there held that a covenant of seizin did
run with the land, and that the assignee might sue, on the
ground that want of seizin is a perpetual breach. The cases
are collected in 2 *Hill. Abr.* 392 ; and the weight of author-
ity undoubtedly is, that such covenants are present cove-
nants, and do not, after a breach, run with the land. It
seems difficult to discriminate the covenant against incum-
brances, from the others ; although Mr. Justice Wilde, in
the case of *Sprague* vs. *Baker*, 17 *Mass.* 590, criticises se-
verely the rule that a chose in action is not assignable. But
a different doctrine has obtained in Massachusetts, both be-
fore and since that case. *Wyman* vs. *Ballard*, 12 *Mass.*
304 ; *Tufts* vs. *Adams*, 8 *Pick.* 549.

But even if this covenant be assignable, we do not see that
this defendant can avail himself of the covenant in the mort-
gage, to relieve himself from a burthen which he ought to
sustain, for the reasons before given.

Another question arises as to the damages. The jury
were instructed, that if the plaintiff was induced to com-
mence the suit against those who used the highway, by the
representations of the defendant, they might include the costs
which he was compelled to pay, in the assessment of dama-
ges.

The ruling of the court was correct, and is clearly sup-
ported by the authorities.

In case of a subsisting easement, the injury arising from
it, or the fair and reasonable price paid by the grantee to
extinguish it, of which the jury will judge, is the measure
of damages. *Prescott* vs. *Truman*, 4 *Mass.* 627.

In an action upon a covenant to warrant, &c., after an
eviction by a paramount title, it was held that the plaintiff
might recover the costs of defending against the suit by
which the grantees were evicted, " because we think those
expenses are inseparably connected with the plaintiff 's claim
of indemnity ; and it would be too much to demand of the

grantees, in such a case, that they should be holden to decide at their peril on the validity of a title set up in opposition to that which the grantors undertook to convey." *Sumner* vs. *Williams*, 8 *Mass.* 222.

Where the plaintiff has extinguished the paramount title, he may recover the consideration paid, "and if put to trouble and expense in procuring the extinguishment, this is a proper ground of damages." 8 *Pick.* 455, *Leffingwell* vs. *Elliot.*

In covenant against incumbrances, where the plaintiff had been evicted by a mortgagee, *held* that the amount due on the mortgage, with the costs of the suit upon the mortgage against the plaintiff, should be the rule of damages, and that thus the plaintiff would be enabled to redeem the land from the funds of the defendant. *Tufts* vs. *Adams*, 8 *Pick.* 550.

Where a grantee of land with warranty, being evicted by a paramount title, extinguished such title, it was held that he might recover charges for his time employed in extinguishing the title, with interest from the service of the writ, and for incidental expenses for horses and carriages, board and lodging, while he was from home. *Leffingwell* vs. *Elliot*, 10 *Pick.* 264. See, also, *Neale* vs. *Wyllie*, 3 *B. & C.* 533 ; *Waldo* vs. *Long*, 7 *Johns.* 173 ; *Swett* vs. *Patrick*, 3 *Fairf.* 9, and *Rickert* vs. *Snyder*, 9 *Wend.* 416, in which last case the plaintiff was permitted to recover counsel fees paid by him in defence of his possession.

These cases show that when the plaintiff has been evicted he may recover the costs of the suit against him. And as in this case he commenced the action by the representations of the defendant, there seems to be no reason why he is not as well entitled to recover of the defendant the costs he has paid, as if an action had been brought against him for obstructing the highway, the costs of which, upon the authorities, he might recover.

We therefore think the instruction of the court was correct.                              *Judgment on the verdict.*