## MOORE v. MERRILL.

The covenants of seizin, of the right to convey, and against incumbrances are broken at the time when they are made, if at all. They therefore do not pass to the assignee of the covenantee.

The covenant of warranty, if possession attend the title assumed to be made by the deed, runs with the land; but if nothing pass by the deed, and no possession attend the conveyances, the covenant is not assigned by them.

If the maintenance of the plaintiff's action establishes the right in the defendant to recover an equivalent of the plaintiff, the fact may be availed of by the defendant as an estoppel.

COVENANT. The declaration set forth that the defendant, on the 14th day of March, 1840, conveyed to the plaintiff three fourths of a certain tract of land, in Bedford, and covenanted that he was seized in fee and had good right to sell and convey, with a general breach of those covenants.

The plea was, that the defendant was seized in fee, and had good right to convey, and issue was joined.

It appeared in evidence that the defendant, on the 14th day of March, 1840, executed to the plaintiff a deed of three fourths of the tract of land, as set forth in the declaration, with covenants of seizin, good right to convey, and the other common covenants in deeds of warranty, and that, at the time of the execution of the deed, Ephraim White and Elijah Leach were severally seized in fee, each of one undivided fourth part of the premises.

To rebut this evidence the defendant introduced testimony to show that the plaintiff, prior to the 23d of June, 1837, and while White and Leach were so seized of two fourth parts of the premises, conveyed three fourths of the same land to John F. Pettengill by a deed of warranty, containing all the common covenants, which deed was not now to be found, and there was evidence tending to show that it had gone into the possession of the plaintiff.

Pettengill, on said 23d day of June, 1837, quitclaimed all his right to said three fourths to Warren Corning, without covenants, and Corning, on the 16th day of June, 1838, quitclaimed the same three fourths to the defendant, with a covenant of warranty, against all persons claiming under him. There was evidence that the plaintiff had said that there was a mistake in the deed from himself to Pettengill; that it conveyed more land than he had a right to convey, and that he should be obliged to buy the land of the defendant, and pay him more than it was worth, as he was bound to make good the title.

The court instructed the jury that if the plaintiff conveyed three fourths of the land to Pettengill by a deed containing a covenant of warranty, as contended by the defendant, that, with the subsequent conveyances by Pettengill to Corning and Corning to the defendant, furnished a sufficient answer to the action.

The jury returned a verdict for the defendant, and the

plaintiff moved for a new trial; and it was thereupon ordered that the foregoing case be reserved and referred to the determination of this court, and that the action stand continued *nisi.*

*S. D. Bell,* with whom was *Morrison,* for the defendant. The plaintiff, having warranted the title which the defendant has, is estopped to impeach it. He may be estopped without plea of estoppel. 1 Ch. R. 477 ; *Davis* v. *Tyler,* 18 Johns. Rep. 490. The defendant might have had a good title under the original deed, and the same might subsequently have become bad. *Whittemore* v. *Shaw,* 8 N. H. Rep. 393.

The defendant may give the facts in evidence, having had no opportunity to plead. 17 Mass. Rep. 369 ; 1 Johns. Rep. 90 ; 16 do. 201 ; 15 Mass. Rep. 307 ; 17 do. 249 ; 24 Pick. 324 ; 4 Cruise's Dig. 471 ; Coke on Lit. 352, a.

This principle extends to assignees. 3 Pick. Rep. 52 ; 17 Mass. Rep. 249.

The plaintiff cannot maintain this suit on the principle of avoiding circuity of action. *Haynes* v. *Stevens,* 11 N. H. Rep. 28. It is like the case of one who has been at two several times the holder of a note and an indorser ; when, if he recovered, the party would have a remedy against him.

*Parker,* for the plaintiff.

GILCHRIST, J. Before the 23d day of June, 1837, White and Leach were seized, each of an undivided fourth part of the premises which are the subject of this controversy, and the plaintiff conveyed three fourths of the same premises to Pettengill in fee, with covenants of seizin and warranty.

Pettengill, on the 23d day of June, 1837, conveyed, by a quitclaim deed, without covenants, all his right and title to those three fourths to Corning.

Corning, on the 16th day of June, 1838, conveyed the same to the defendant, with a covenant of warranty against all persons claiming under him.

And on the 14th day of March, 1840, the defendant conveyed the same three quarters to the plaintiff in fee, with full covenants of seizin and warranty ; and the plaintiff thereupon brought this action, counting upon a breach of the defendant's covenant of seizin, and of his covenant that he had a good right to convey. The question is, whether the plaintiff is estopped, by the covenants contained in his deed to Pettengill, to deny that the defendant, who has acquired all that passed to Pettengill by that deed, had such seizin and right to convey, against the truth, which has been shown by the evidence of the title of White and Leach to a part of the land embraced in the conveyances.

If he is so estopped it can be only upon the principle that he is liable upon the covenants contained in his deed to Pettengill, which, running with the land, have passed by the several conveyances to the defendant, who is entitled to an action upon them in his own name against the plaintiff. As in the case put by *Coke,* who says, that the reason is for avoiding circuity of actions ; Co. Lit. 265, a ; or, as was said in *Haynes* v. *Stevens,* 11 N. H. Rep. 33, "In order that the covenant should operate by way of rebutter, it must appear that if the plaintiff should recover in this suit, the defendant might thereupon recover the same amount of him in a suit upon his covenant."

The question, then, is, whether the plaintiff, upon recovering in this action upon the defendant's covenants that he was seized and had good right to convey, would be in turn liable to him upon the covenants of seizin, warranty and right to convey, contained in the deed of the plaintiff to Pettengill.

In *Kingdon* v. *Nottle,* 4 M. & S. 53, which was an action upon the covenants of the defendant that he was seized

of the premises, and had good right to convey the same, Lord *Ellenborough* said, that these covenants pass with the land, and that as long as the defendant has not a good title, there is a continuing breach. It is in the nature of a covenant to do a thing *toties quoties,* as the exigency of the case may require, and not like a covenant to do an act of solitary performance, which, not being done, the cove-nant is broken once for all.

But the doctrine of this case has encountered opposi-tion in many cases that have since arisen. In *Mitchell* v. *Warren,* 5 Conn. Rep. 497, the language of Lord *Ellen-borough* was criticised by the chief justice in delivering the opinion, and the doctrine directly repudiated. It was said that the novel idea of calling it a continuing breach was an ingenious suggestion, but of no substantial import. " Every breach of contract," he says, " is a continuing one until it is in some manner healed; but the great ques-tion is, to whom does it continue as a breach? The only answer is, to the person who had the title to the contract when it was first broken. It remains as it was — a breach to the same person who first had a cause of action upon it. If it be any thing more, it is not a continuing breach, but a new existence." " It has no analogy to a covenant to do a future act at different times, which may undergo repeated breaches. It cannot be partly broken and partly sound; but the grantor is seized or not seized, and there-fore the covenant is inviolate, or violated wholly."

To the same effect is the case of *Slater* v. *Rawson,* 1 Met. Rep. 450, in which it is said of these covenants that " if broken at all, they are necessarily broken at the moment of the execution of the deed;" that, therefore, they do not run with the land, and are incapable of being so assigned as to entitle the assignee to sue.

The doctrine had previously been established in Massa-chusetts, in *Marston* v. *Hobbs,* 2 Mass. Rep. 433; in 14 Pick. Rep. 167, in the case of *Bartholomew* v. *Condee;* and in *Bickford* v. *Page,* 2 Mass. Rep. 455.

In *Hamilton* v. *Wilson*, 4 Johns. Rep. 172, it was held that a covenant of seizin, if broken, is so as soon as it is made, and does not descend to the heirs of the covenantee.

The subject is treated in 4 Kent's Com. 471, where the author concludes, in harmony with what he avers to be the general current of the authorities, that these covenants do not run with the land, and condemns the decision of *Kingdon* v. *Nottle*, as founded upon a reason too refined to be sound.

The decisions in Maine are also in conformity with those of Massachusetts. *Donnell* v. *Thompson*, 1 Fairf. 174 ; *Fairbrother* v. *Griffin*, do. 91.

English authorities are also apparently opposed to the case of *Kingdon* v. *Nottle*. "If one, supposing he hath good . estate, covenants that he is lawfully seized or possessed, or that he hath a good estate, or that he is able to make such an alienation, and in truth he hath not, but some other hath an estate in it before, in this case the covenant is broken as soon as it is made." Shep. Touch. 170.

Lessee covenants for himself, and assigns to rebuild a house within a certain time ; this covenant, being broken before the assignment, doth not bind the assignee. *Gresiot* v. *Green*, 1 Salk. 199.

The same doctrine was intimated in this State, in the case already referred to, of *Haynes* v. *Stevens*, 11 N. H. Rep. 28. The conclusion, therefore, is, that the covenants of seizin, that the grantor has good right to convey, and that the premises are clear of incumbrances, are covenants as to things existing at the time they are made. If the facts covenanted to exist do not exist in fact, the covenants are broken at the moment, and an action accrues to the party then entitled to the benefit of them to sue for damages. That right of action is not assignable in law, and does not pass by force of any conveyance he may afterwards make, purporting to grant over the premises,

whether such conveyance be wholly inoperative for want of a title, or whether it actually convey one, subject to an incumbrance.

But the covenant of warranty is prospective; it runs with the land conveyed, descending with it to the heirs of the covenantee, or vesting in his assignees. 4 Kent's Com. 471, 472; *Slater* v. *Rawson*, 1 Metc. Rep. 450; *Donnell* v. *Thompson*, 1 Fairf. Rep. 174; *Fairbrother* v. *Griffin*, do. 91; where it was held that an action on this covenant did not lie in behalf of one who had conveyed the land; upon the ground that it run with the land.

The question then occurs, whether there is between the defendant and the plaintiff any such privity of estate as would entitle the former to an action upon the covenants of the latter to warrant and defend the premises described in the deed to Pettengill and his assigns.

The general doctrine is, that the assignee, by reason of the privity of estate, is entitled to the benefit of all covenants running with the land. *Spencer's Case*, 5 Co. 176. But it has been held that when that estate is determined, the covenants cease to be assignable. Being merely accessories to the estate, they cannot pass by a deed that, for want of an estate upon which to operate, is ineffectual as a conveyance. Such was the doctrine in *Andrew* v. *Pearce*, 4 B. & P. 158. There the estate for years, to which the covenants were annexed, became extinct by the death, without issue, of the tenant in tail, who was the lessor. The attempted assignment was after this event, and it was held that the covenant running with the land ceased by the same event to be assignable, and that the assignee could maintain no action upon it.

Such is also the doctrine of *Beddoe* v. *Wadsworth*, 21 Wend. Rep. 120. Nothing passed by the deed of the plaintiff to Pettengill upon which the covenant can operate. No land, therefore, passed to the defendant; how, then, can the covenant enure to his benefit? In

the case last cited it was held, that if possession was taken under the deed, and transferred by a subsequent conveyance, an action may be maintained by the last grantee upon the covenants, because such possession would carry the covenants annexed to the land, although no title was in fact in the grantor at the time of the conveyance. Without such possession there can be no eviction, which is indispensable for laying the ground of any action upon the covenant of warranty.

It does not appear by the case whether the plaintiff at the time of the conveyance to Pettengill was seized or not. We do not feel authorized to infer that he was so seized, either from the omission of the case to state how the fact was, or from the seizin of Leach and White, who might have been his cotenants, and seized as well for him as for themselves.

There is evidence that the plaintiff said, that, through mistake, he had conveyed to Pettengill more land than he had a right to convey, and that he should be obliged to buy land of this defendant, and pay more than it was worth, in order to make good his covenants in that deed, or something to that purport. Perhaps upon this evidence it might be left to the jury to inquire whether his transaction with the defendant were undertaken for the purpose of surprise and fraud, and to avoid the operation of his own covenants, and with instructions, if they so found, to find a verdict for the defendant upon that ground.

Upon this ground, and for the purpose of enabling the defendant to supply such proof as may exist, of the possession of the plaintiff at the time of his deed to Pettengill, and of the parties mesne between him and the plaintiff, there must be a new trial. The verdict must therefore be set aside, and a

*New trial granted.*