## Root *vs.* French.

A *fraudulent purchase* of goods gives no title to the *fraudulent purchaser* as against the *vendor ;* nor does his transfer of the goods by assignment to a *bona fide creditor* of his, in payment of a *pre-existing debt,* vest the title in such creditor. On the contrary, if the creditor *detains* the goods after demand to deliver them up, the *vendor* may maintain *replevin* against him for the goods.

A party who obtains the goods from the *fraudulent purchaser,* without notice of the fraud, *in the usual course of trade,* that is, gives *value* for them makes advances upon them, incurs responsibilities upon the credit of them, or receives them in pledge for money or property loaned upon the strength of them, may hold the goods against the vendor; such party is a *bona fide purchaser,* but not he who receives them in payment, or security for a *pre-existing debt.*

This was an action of *replevin*, tried at the Albany circuit in September, 1833, before the Hon. James Vanderpoel, one of the circuit judges.

The suit was for the recovery of a quantity of groceries of the value of about $200, sold on the *fourteenth* of November, 1832, by the plaintiff, to one *Ray Jenkins*, a retail grocer, on a credit of 90 days, for which Jenkins gave his note on the next day. The groceries were delivered to Jenkins, and they, together with all his stock in trade, were,on the *seventeenth* of the same month, transferred by him, by assignment, to the *defendant*, to indemnify him for responsibilities assumed, as the *endorser* of Jenkins. The plaintiff proved the purchase by Jenkins *fraudulent*, being made on the eve of bankruptcy. The defendant refusing to deliver up the goods to the plaintiff, they were taken by virtue of a writ of replevin. It was admitted by the plaintiff that Jenkins was indebted to the defendant in the sum of $1921, and that the property assigned by Jenkins to the defendant was not of sufficient value to pay such indebtedness. Upon these facts the judge charged the jury, that a merchant, in failing circumstances, has the right to prefer one creditor to another; and it being admitted that the defendant was a *bona fide* creditor, the assignment to him was valid, unless they should find not only that Jenkins had committed a fraud upon the plaintiff, but that the defendant was

a party to such fraud, or had knowledge of it at the time of, or previous to the execution of the assignment. The counsel for the plaintiff requested the judge to charge the jury, that the defendant *not having paid value for the goods at the time of the assignment,* but having applied them in payment of a *pre-existing debt,* he was not entitled to be considered as a *bona fide purchaser.* The judge refused so to charge, and on the contrary, instructed the jury that the defendant was a *bona fide purchaser.* The jury, under the charge of the judge found a verdict for the defendant, and assessed the value of the goods at $211$\frac{51}{100}$. The plaintiff having excepted to the charge of the judge, now moved for a new trial.

*R. W. Peckham,* for the plaintiff.

*J. M'Kown,* for the defendant.

*By the Court,* SAVAGE, Ch. J. If the judge was correct in considering the defendant a *bona fide* purchaser of the goods in question, then the charge was right; otherwise not. It is necessary, therefore, to inquire what constitutes a *bona fide* purchaser from a fradulent vendee of goods? The vendee in the assignment in this case recites, that "Abel French has endorsed and become responsible for me, on divers promissory notes and responsibilities, to the amount of $1921;" and in consideration of the said sum of $1921, he assigns the goods in question. Was this such a *bona fide* purchase as bars the title of the rightful owner? That a fraudulent purchase of goods gives no title to the *fraudulent purchaser,* as against the vendor, is a proposition which will not be denied. Had there been no assignment by Jenkins to French, of the goods in question, there is no doubt that the plaintiff might have taken his goods by replevin from Jenkins, assuming that the purchase was fraudulent on his part. Before the revised statutes were passed, it was held that *trespass* would not lie in such a case, where the goods had been delivered; and as *replevin* then could be brought only in such cases where trespass might also be brought, replevin could not then have been brought; the party would have been driven to his action of trover, or other actions on the case, but now the action lies whenever

goods or chattels shall have been wrongfully taken, *or shall be
wrongfully detained*. A tortious or wrongful taking is not *now*
necessary to sustain the action of replevin ; a wrongful deten-
tion is sufficient.    2 *R. S.* 522, § 1.    If, therefore, Jenkins
procured the goods in question by fraud, he acquired no right
to them as against the plaintiff ; a detention of them, after
demand by the plaintiff, would be wrongful, and the plaintiff
might have regained possession of his goods by the writ of re-
plevin.    As between the plaintiff and Jenkins, Jenkins had
no title to the property in question.    It is a general rule that
a person who has no title to property can convey none ; but to
this rule there are some exceptions.    To create such excep-
tion, and to give a third person a better title, and a superior
*equity to the true owner,* such third person must have given
*value* for such property, or incurred some *responsibility* up-
on credit of it, and *without notice* of the fraud.  Such innocent
third person is a *bona fide* purchaser for valuable consideration.
In such a case the vendor, who has been defrauded of his
property, and the *bona fide* purchaser from the fraudulent
vendee, are both innocent parties ; and when one of two inno-
cent parties must suffer from the fraud of a third, the loss
should fall on him who enabled such third person to commit
the fraud.  Possession of personal property is *prima facie* evi-
dence of property.  This is a general rule to which there are
some exceptions also.  The *bona fide* purchaser, therefore, is
justified in considering the fraudulent vendee the true own-
er—such *bona fide* purchaser as the terms *bona fide* import,
having no notice of the fraud ; and considering the possessor
as the owner, the *bona fide* purchaser is justified in purchasing
such property and giving value for it, or in making advances
upon it, or incurring responsibility upon the credit of it, or in
receiving it in pledge for money or property loaned upon it.
He is protected in doing so upon the principle just stated, that
when one of two innocent persons must suffer from the fraud
of a third, he shall suffer who, by his indiscretion, has enabled
such third person to commit the fraud.  A contrary principle
would endanger the security of commercial transactions, and
destroy that confidence upon which what is called the *usual
course of trade* materially rests,

The doctrine just adverted to is applicable to all dealings between men; not only to the purchase and sale of property, but to the negotiation of bills of exchange and promissory notes. In a case of the latter description Ch. J. Spencer says: " I understand, by the *usual course of trade*, not that the holder shall receive the bills or notes thus obtained (that is, from a fraudulent payee) as securities for antecedent debts, but that he shall take them in his business, and as payment for a debt contracted at the time." *Codington* v. *Bay*, 20 *Johns. R.* 651. If this is true of negotiable paper, which in commerce answers many of the purposes of money, *a fortiori* is it true of goods and chattels merely. In *Collins* v. *Martin* 1 *Bos. & Pul.* 651, Ch. J. Eyre, speaking of the defence to be made to a bill of exchange, says: " If it can be proved that the holder gave no value for the bill, then indeed he is in privity with the first holder, and will be affected by every thing which would affect the first holder. This all proceeds upon an *argumentum ad hominem*. It is saying, you have the title, (technically he means,) but you shall not be heard in a court of justice to enforce it against good faith and conscience." In *Evans* v. *Smith*, 4. *Bin.* 368, it was decided that a bill of exchange, assigned as security for the payment of a debt, was not passed *in the usual course of business*. The case of *Buller* v. *Harrison*, *Cowp.* 565, contains a principle which is applicable here, to wit, that one shall not be benefitted by the mistake of another; and if not by the mistake, he surely shall not by his fraud. That was an action for money had and received to recover back a sum of money paid by the plaintiff to the defendant, as agent of certain merchants at New York, upon a policy of insurance; the loss then was supposed to be fair; it proved to be foul. The defendant, on receiving the money, gave credit to his principals in account with them, they being indebted to him in an account greater than the sum paid upon the policy, but he had accepted no fresh bills, advanced no money, nor given any new credit to his principals. The jury found for the defendant; a new trial was granted. The law, in case of an agent, is, that if he has paid over the money improperly received by him, no action lies against *him*, but against his *prin-*

NEW YORK, *cipals ;* but Lord Mansfield held, that the passing money to
May, 1835. the credit of the principals was no payment. His situation
was not altered ; he had advanced nothing, nor incurred any
new responsibility upon the credit of the money so mispaid to
him. Lord Mansfield asks : "Is it conscientious then that the
defendant should keep money which he got by the misrepre-
sentations of his principals ?" In the case now before us, the
defendant obtained possession of the goods in question through
the fraud of Jenkins, who was his debtor. So far this case
runs parallel with *Buller* v. *Harrison.* The only difference
is, that this defendant has in his hands goods ; the defendant
in that case had money. Here the plaintiff was clearly enti-
tled to recover against Jenkins, who, for the purpose of this
comparison, may be called the principal, as the defendant
makes title through him. In that case the plaintiff was clearly
entitled to recover against the principals of the defendant. In
both cases there was no new credit given—no money or prop-
erty advanced—nor any new responsibility assumed ; but in
both the money and property are received upon an antecedent
debt. In that case the court said it was not conscientious for
the defendant to retain the money : can it be conscientious in
this case for the defendant to retain the property in question ?

That a *fraudulent purchaser* of goods acquires no title as
against the vendor, and has no interest which can be seized
on execution, I cite *Allison* v. *Mathien,* 3 *Johns. R.* 238, *Van
Ceef* v. *Fleet,* 15 *id.* 150, *Buffington* v. *Gerrish,* 15 *Mass. R.*
156, *Earl of Bristol* v. *Wilsmore,* 1 *Barn. & Cress.* 514, 8
*Com. Law R.* 146, *Mowry* v. *Walsh,* 8 *Cowen,* 238. The
case of *Buffington* v. *Gerrish* was much like this case, ex-
cept that the defendant there was the sheriff, who had levied
upon the property by virtue of executions in favor of *bona fide*
creditors. The court consider those creditors as the real de-
fendants, and say that the plaintiff's right to reclaim his prop-
erty from the fraudulent purchaser is indisputable. He had
done no act by which his creditors had been deceived with re-
spect to this property ; their debts all existed before the frau-
dulent purchase ; they claim through him ; they were in the
same condition as to their debts that they were before the fraud,
and they ought not to reap the fruits of it, no credit having been

Root
v.
French.

given on account of that property. It is intimated in that case, that had there been a sale of the property and value paid for it without notice of the fraud, the purchaser would have a good title; and this would be the case, whether the sale were public or private. It is not denied that the defend-ant in this case stands in the relation of *assignee* merely. In *Peacock* v. *Rhodes, Dougl.* 636, Lord Mansfield says: " An assignee must take the thing assigned, subject to all the equi-ty to which the original party was subject." He then draws a distinction in that respect between an assignment of a chat-tel and an endorsement of a promissory note. In that case a stolen bill had been endorsed to the plaintiff for cloth and other articles, in the way of the plaintiff's trade as a mercer, and the plaintiff paid the full value of it in the course of his business. The defendant in this case, according to these principles, was not a *bona fide* purchaser for valuable con-sideration. His title therefore is not equal to that of the ori-ginal owner, who was defrauded of his property. The judge should have so charged the jury. A new trial must be grant-ed; costs to abide the event.