* Bartley, J.
The questions for determination in this case, arise upon the exceptions to the charge of the court to the jury, and are as follows
1. Whether the liability of Briggs, on the note, was defeated by the agreement of Car and Brock, incorporating an illegal amount, of interest in the amount for which the note was made payable?
2. Whether the liability of Briggs to Brock could be invalidated by showing a fraud on the part of Car, in forging the signatures of Horney and Anderson on the note, of which it does not appear that Brock had any knowledge at the time he received the note?
Of these in their order.
I. The effect of usury in this state, according to the course of adjudication for many years, is not to vitiate the entire contract, but only to the extent of the usury. The consideration maybe inquired into for the purpose of showing illegal interest and avoiding the agreement to this extent, but no further. And where usury is shown, a recovery may still be had upon a contract for the principal and six per cent, interest. Lafayette Benefit Society v. Lewis, 7 Ohio, 80. Rains et al. v. Scott, 13 Ohio, 107. The obligation of Briggs being that of a surety, was accessory to the obligation of his principal. And usury will not avoid a contract as to a surety beyond the extent to which it is vitiated as to the principal.
It is claimed, on behalf of the plaintiff in error, that as the note was signed in blank, and Briggs a mere surety, whose liability could not be extended by implication, par, in filling up the note with an amount which included illegal interest, exceeded his authority, and thereby discharged the liability of Briggs. The fact that the note was signed in blank, and filled up afterward, could not affect the liability of Briggs. Car had agreed to give Brock a note with security for one thousand dollars, at ten per cent, interest on a year’s credit. The note having been signed in blank, was delivered to Car, to be filled up without any special restrictions as 306] to the terms or amount. Briggs thus reposed full Confidence in and gave ample authority to Car to fill up the note, and when *307 filled up, it became obligatory upon him to the same extent it would have been if filled up before it was subscribed. But having been given before the enactment of the statute of 1850, fixing the con • ventional rate of interest at ten per cent., the stipulation for the excess of interest over six per cent, was void, and the legal effect of the instrument was to create an obligation for the payment of the one thousand dollars with six per cent, interest. Whatever Car may have attempted to do, whether within the scope of his authority or not, he did not, in reality, create any legal obligation beyond the extent of the principal with the legal rate of interest. Car had the capacity to make the contract, and the authority to fill Up the note; and if he exceeded his authority by stipulating for an illegal rate of interest, his act, to the extent of the usury, was void, and to this extent created no obligation, and could be avoided pro tanto, by'either himself or Briggs, by showing the fact, on any attempt to enforce the collection of the note.
In the case of Violet v. Patton, 5 Cranch, 151, Chief Justice Marshall said : 11 That the objection that the indorsement preceded the making of the note, comes with a very bad grace from the mouth of the indorser. He indorsed the paper with the intent that a promissory note should be written on the other side, and that he should be considered a$ the indorser of that note. It was the shape he intended to give the transaction ; and he is now concluded from saying or proving that it was not filled up when he indorsed it.”
The plaintiff in error refers us to the case of The Bank of Chillicothe v. Swayne et al., 8 Ohio, 286, and also the case of The Preble county Bank v. Russell, 1 Ohio St. 320. The principle settled in those cases has no application here. In each of those cases the contract was declared void, not because of any illegal element or stipulation entering into the consideration of the instrument, but for want of legal capacity on the part of a corporation to make a contract in derogation of the authority conferred by its charter, being the law of its creation.
*II. Could the liability of Briggs be affected by showing a [307 fraud on the part of Car in forging the names of Horney and Anderson to the note ?
If there was any participation in the fraud on the part of Brock, the creditor', in relation to the obligation of the surety, or if the fraud was perpetrated by the principal debtor, with the knowledge or assent of Brock, the liability of the surety would clearly be disc *308 harged. In the case of Stone v. Compton, 5 Bing. (N. C.) 152, Tindal, chief justice, said: “ The principle to be drawn from the cases, we take to be this, that if, with the knowledge or assent of the creditor, any material part of the transaction between the creditor and his debtor is misrepresented to the surety, the misrepresentation being such that, but for the same having taken place, either the suretyship would not have been entered into at all, or, being entered into*, the extent of the surety’s liability might be thereby increased, the security so given is voidable at law on the ground of fraud.” The same doctrine is recognized in the case of Graves et al. v. Tucker, 10 Smedes & Marshall, 22.
In the case before us, the charge of the court was, that although Brock knew the relation of Briggs to be that of surety, yet that the fraud would afford no defense to Briggs, unless notice of the forgery were traced to Brock at or before the filling up of the note. We do not perceive any error in this instruction to the'jury. Briggs, by subscribing his name to the note in blank, gave credit to Car, and authorized any person who might legally become the holder of the instrument, to trust Car, on his accountability, to any amount for which Car had authority to fill up the note. Briggs, by reposing this confidence in Car, and delivering to him the note with his name to it, placed it in the power of Car to procure credit with other persons on the faith of his (Briggs’) liability. In the case of Russell v. Langstaff, Douglass, 516, Lord Mansfield said: “ The indorsement on a blank note is a letter of credit for an indefinite sum; and that it does not lie in the mouth of the indorser to say 308] that the ^indorsement was irregular.” It was incumbent on Briggs, when he placed his name to the note, to ascertain and know whether those whose names appeared on the note as his’co-sureties had signed the note and become legally bound. And by signing his name on the instrument, after the names alleged to have been forged, although he did not thereby warrant, yet he did distinctly sanction and affirm the genuineness of the previous signatures. If, therefore, a fraud were practiced on Briggs, to which Brock was not a party, and of which he had no knowledge at the time, but perpetrated by a person in whom Briggs had reposed special confidence, and to whom he had given the credit of his name, it was his misfortune, not Brock’s fault. It appears to be well settled, both by reason and by authority, that where one of two innocent persons must suffer by the fraud of a third person, he *309 who trusted the third person, and placed the means in his hands to commit the wrong, must bear the loss. Lickbarrow v. Mason, 2 Term, 70; Lane v. Borland, 2 Shepley, 77; Root v. French, 13 Wend. 572. The wrong here was one which Briggs’ vigilant regard for his own interest and safety could and should have avoided. In the case of the Bank of St. Clairsville v. Smith et al., 5 Ohio, 222, the Supreme Court of this state held that when a loss must'be sustained by one of two persons, through the fault of a third party, in passing negotiable paper, he who reposed the first confidence must bear the ultimate loss.
The relation between a surety and the holder of a promissory • note is, in many respects, similar to that which exists between the indorser and the holder; and we learn from Story on Promissory Notes, 153, that the. obligations which exist between the indorser and every subsequent holder of a promissory note, is similar to that which exists between the drawer and the payee of a bill of exchange. And one of the consequences of the doctrine that a negotiable instrument, after indorsement, will pass by mere delivery, is, that if it should, after indorsement, be lost or stolen, or fraudulently misapplied, any person who should subsequently *be- [309 come the holder of it, bona fide, for a valuable consideration, without notice, would be entitled to recover the amount thereof, and hold the same against the rights of the owner, at the time of the loss or theft. This arises from the peculiar rights and obligations of negotiable paper, and the nature of the functions which it performs in commercial transactions. There is, therefore, great justice and propriety in the rule, that the payee or indorsee of negotiable paper takes it free from any of the conflicting equities existing between the several makers or obligors, of which he had no notice.
Petition dismissed, and the judgment of the district court affirmed.