There can be no doubt that Joy's drafts, in the name of Joy 
Monteath as agents of the Albany and Canal line of tow boats, for legitimate purposes in the business of the line, bound the defendants. Joy Monteath were not mere joint agents; each had authority to do business for the line, and the signatures of both as agents, though written by one, bound the defendants. It is true that Joy testified on his direct examination, that he and Monteath were joint agents, and not partners, in transacting the business of the line; but on his cross-examination he said, he was in the habit of signing for the defendants; that the defendants got paper like the drafts in question, discounted at the Canal Bank, previously to these for years, whenever they wanted funds; that he and Monteath had been defendant's agents twelve or thirteen years, and that there was nothing in the form of these drafts different from those they had usually drawn in the business of the company or line. These drafts, therefore, must be regarded as executed in a manner that would bind the defendants, if *Page 512 
they had been used in the legitimate business of the line or company.
There is nothing on the face of these drafts to distinguish them from those properly used by Joy Monteath, as agents, in the business of the defendants, and being negotiable, I am unable to see why they are not valid in the plaintiff's hands, its cashier having discounted them before maturity in good faith, in the regular course of business, and the Canal Bank having received the proceeds thereof.
The plaintiff took the drafts before maturity and under circumstances that render it a bona fide holder thereof for value, within the decision of the Supreme Court in the NorthRiver Bank v. Aymar (3 Hill, 262); and this court held in TheFarmers' and Mechanics' Bank v. The Butchers' and Drovers'Bank (16 N.Y., 125), that that case was correctly decided by the Supreme Court, notwithstanding the fact that it had been reversed by the Court for the Correction of Errors.
I have never doubted that the Supreme Court properly decided the case of the North River Bank v. Aymar, and I am of the opinion we should now hold that their decision was correct, for the reasons assigned by Judge SELDEN in The Farmers' andMechanics' Bank v. The Butchers' and Drovers Bank (supra).
In this view of the law, the fraudulent purpose for which the drafts in question were made by the agents of the defendants and negotiated by the cashier of the Canal Bank, is not a defence to them in the hands of the plaintiff.
The rule which makes the defendants liable upon the drafts is succinctly and clearly stated by Professor Parsons. (1 Parsons on Notes and Bills, ed. of 1863, p. 108.) He says "If an agent be authorized generally to execute notes in the name of and for the benefit of his principal, and he executes notes in his principal's name for the fraudulent purpose of raising money for his own use, such notes will nevertheless be binding upon the principal in the hands of a bona fide holder."
The defendants by employing Joy Hoyt, and giving them *Page 513 
authority to draw, accept and negotiate drafts in the business of the Albany and Canal line of tow boats, enabled them, in conjunction with the cashier of the Canal Bank, to make the drafts in question and negotiate them to an innocent person for value, for a purpose outside of the business of the line or company; and the defendants come within the rule, that when one of two innocent persons must suffer from the fraud of a third, he shall suffer who by his indiscretion has enabled such third person to commit the fraud. (13 Wend., 572; 7 Paige, 69; 1 Hill, 307; 2 id., 465; 6 Wend., 620; 23 id., 268.)
When the drafts were presented to the plaintiff, its cashier was authorized therefrom to believe they were drawn by Joy 
Monteath, and accepted by Hoyt as agents, upon sufficient authority, in the regular business of the defendants, and that the cashier of the Canal Bank was duly authorized to indorse them and forward the same to the plaintiff to be discounted in the regular course of business; and upon this state of facts the defendants were bound to pay the drafts, notwithstanding the fraudulent purpose for which they were made and negotiated, because Joy Hoyt acted within the authority conferred on them by the defendants in drawing and accepting them.
There is no good ground for the position taken by the defendant's counsel, that the cashier of the Canal Bank acted as the agent of the plaintiff in receiving the drafts from Joy or Hoyt, and forwarding them to the plaintiff. The opposite ground is the tenable one; and the cashier of the Canal Bank must be deemed the agent of the defendants in the transaction; for the plaintiff's cashier had the right to suppose they had authorized and requested the Canal Bank to send the drafts to the plaintiff for discount, and that the cashier of that bank did so for the benefit of the defendants.
For the foregoing reasons I am of the opinion the judgment in the action should be reversed and a new trial granted, costs to abide the event. *Page 514 
All the judges were for reversal — WRIGHT, J., on the ground that the question whether the plaintiff was a bona fide holder of the draft, should have been submitted to the jury.
Judgment reversed, and new trial ordered.