It has been held in numerous cases that the finding of a referee upon questions of fact presented upon a trial, cannot be reviewed in this court. (Macy v. Wheeler, 30 *Page 564 564 N.Y. 231; Young v. Davis, id. 134; Sandford v. EighthAvenue R.R. Co., 23 id. 343; Hoyt v. Thompson, 19 id. 207, 212; Oldfield v. N.Y.H.R.R. Co., 14 id. 310.)
We cannot, therefore, examine the facts determined in the subordinate courts, if they are covered by the findings of the referee. It is claimed, however, that the referee does not find against the plaintiff as to the fact that the defendant had the benefit of the money loaned to Henry Wilkes; and, therefore, he is liable to account for it to the plaintiff. The money was applied to the payment of a mortgage upon the defendant's real estate, but it being received by another party, and applied by him in the payment of a debt, which that party was bound to pay, it does not necessarily follow that the plaintiff can maintain an action to recover it of the defendant. The finding of the referee, that Henry Wilkes, claiming to act as the agent of the defendant, obtained the loan and applied the money to pay an incumbrance upon the defendant's land, which Henry was bound to cancel, does not, of itself, necessarily and absolutely raise an obligation upon the part of the defendant to refund the money, because he was benefited by the discharge of the mortgage. The defendant was a stranger to the transaction, and had no lot or participation in it. The money was not paid to him, but to Henry Wilkes, and he had no knowledge in regard to it at the time it was obtained, or when it was appropriated. The mortgage was canceled without his privity or procurement, and the money used in procuring its satisfaction was never received by the defendant at all. So long as Henry Wilkes was obligated to pay the mortgage, it was of no consequence to the defendant of whom he obtained the money, provided he acted without the authority or knowledge of the defendant. Nor was the defendant under any obligation to pay the demand, because the money was obtained by a fraudulent misrepresentation, so long as he did not assent to it. The party procuring it was not in any sense his agent in the transaction, and the facts found do not present a case of money received by the defendant in payment of an antecedent debt. They differ entirely from a *Page 565 
case where goods are purchased fraudulently, and pass into the hands of a bona fide creditor in payment of a pre-existingdebt. (Root v. French, 13 Wend. 570.) In the latter case the party was prosecuted for the goods thus procured, and the proceeding is against the property as well as the person who has it in possession. Here the money has been applied without the knowledge of the defendant, and he has had no connection either with its procurement or its application. He was entirely innocent of any knowledge of the circumstances under which it was obtained, and the mortgage was discharged in accordance with an obligation by Henry Wilkes, without his instigation or request. It is difficult to see how there can be any relationship between the defendant and the plaintiff's assignor, which imposes a legal liability upon the defendant. I am not aware of any principle of law which authorizes this court to adjudge, that, without privity, possession of the property, knowledge of its being received, or any act showing connection with the matter an implied obligation can arise against an innocent party, which will sustain an action like the one now presented for our consideration. To do so it seems to me we would be obliged entirely to ignore the well settled rule, that when one of two innocent persons must suffer from the fraud of a third, the one shall suffer who by indiscretion has enabled such third person to commit the fraud.
It is said that the referee erred in admitting evidence upon the cross-examination of Henry Wilkes, of an agreement between him and the defendant, that as between them Henry Wilkes was to pay the mortgage upon the defendant's property. I think that the testimony was competent for the purpose of showing that the money was paid for the benefit of Henry Wilkes, and to cancel an obligation he had assumed, as well as for the purpose of rebutting any presumption which might arise from the facts proved, that Henry Wilkes had any authority from Charles Wilkes to borrow the money or to appropriate it to the payment of the mortgage. The question in the case was, whether the money was loaned to Henry Wilkes or Charles Wilkes. To *Page 566 
establish that it was loaned to the defendant, the plaintiff had proved that it was used for the purpose of paying off a mortgage upon the property belonging to the defendant, thus prima facie
showing in connection with the acts and declarations of Charles Wilkes a liability on the part of the defendant. These facts, I think, made it entirely competent to prove that by the agreement between the parties, the mortgage was the debt of Henry Wilkes, and was to be paid by him and not by the defendant. The proof of the plaintiff necessarily led to this inquiry and opened the transactions between the parties, and the evidence introduced threw light upon the question in controversy. And even if it did not establish that no loan actually was made, yet with conflicting and contradictory testimony as to the principal issue which was litigated upon the trial, it certainly had an important bearing upon the subject. For reasons of a similar character, and as a part of the transaction between Henry and Charles Wilkes, which had been opened by the plaintiff's testimony, it was competent to prove mutual dealings between these parties.
The letter from the defendant to Henry Wilkes was also evidence as to a portion of the transaction, and tended to establish that Henry Wilkes had acted without authority in making the loan. It was a portion of the correspondence between the defendant and Charles Wilkes, and showed a state of facts irreconcilble with the idea that the defendant ever gave any authority to Henry Wilkes to borrow the money for him.
It is insisted that the referee erred in allowing the defendant to cross-examine the witness Henry Wilkes in regard to the papers in the suit brought by the plaintiff against him, to recover the same money for which this action was instituted, and as to the contents of the letters written by him to the defendant without first producing the papers and showing them to the witness. The witness denied making the statements in the papers in the suit specifically asked about; no evidence was there introduced to show that he had, and the papers in the action were put in evidence in a subsequent *Page 567 
stage of the case, by the plaintiff, where the same witness was again interrogated on the subject. The witness did not remember particularly as to the contents of these letters, and they were also introduced upon the examination of the defendant. One of the reasons of the rule requiring the production of papers under such circumstances, is in order that the court may be possessed of the whole; and if any error was committed by the referee in his ruling, I think it was entirely obviated by the introduction of the papers afterward. I do not see that any injury could result to the plaintiff in advantage to the defendant by their non-production at an earlier period.
I think that no error was committed by the referee upon the trial of the case, and that the judgment should be affirmed.
All the judges concurring,
Judgment affirmed. *Page 568