D. F. HAMMOND, APPELLANT, vs. J. J. LYNES, APPELLEE.

A sale of goods obtained under false and fraudulent representations works no change of property or title while the goods remain in the hands of the purchaser. Such a sale may be avoided by the vendor, and he can maintain an action in replevin for his goods.

Appeal from the Circuit Court for Orange county.

The facts are stated in the opinion of the court.

*Hammond & Johnson* for Appellant.

*St. Clair Abrams & Beggs* for Appellee.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

In the month of November, 1883, the plaintiff, D. F. Hammond, commenced his action in replevin against the defendant, J. J. Lynes, and in his declaration alleges " that the defendant on the 9th day of November, A. D. 1883, at Orlando, on the corner of Pine street and Orange avenue, to wit: in the county aforesaid, by fraudulent representations, unlawfully obtained the possession of a certain sorrel mare about nine years old, known as the Summerlin mare, blind in the left eye ; said mare being of the value of $150, and her mare colt, of a dark brown color about seven months old, of the value of $50, the property of the said plaintiff," and claimed damages to the amount of four hundred dollars. The defendant pleaded not guilty, and issue was duly joined.

The cause was tried in December of the same year, and the jury found the defendant not guilty.

The plaintiff moved the court to grant a new trial, and assigned the following reasons therefor :

1st. Because the verdict is contrary to law.

2d. Because the verdict is contrary to the evidence.

3d. The verdict is decidedly against the weight of evidence.

4th. The court erred in refusing the evidence of Dr. Dickinson, William Cameron, L. P. Mull and Thomas Harmon, offered by the plaintiff to prove the fraudulent representations of the defendant, and also to prove the lameness of said horse prior to the 9th November, 1883.

5th. The court erred in rejecting the evidence of Mrs. D. F. Hammond.

6th. The court erred in refusing to give to the jury the instructions asked for by the plaintiff.

7th. The court erred in giving the instructions asked by the defendant.

8th. The court erred in its ruling upon objections made by the plaintiff on matters of law during the trial of said cause.

9th. The court erred in sustaining objections made by said defendant of questions of law arising during the course of the trial. This motion, after being considered by the court, was denied, and the plaintiff's counsel duly excepted. Judgment was entered for the defendant and the plaintiff brings his case into this court by appeal.

On the trial, M. Silver, a witness on the part of the plaintiff, testified that he knew the parties ; that he was in the office of the plaintiff when defendant called and said he had a mare that he desired to trade for the mare and colt owned by the plaintiff ; that the plaintiff then told defendant his animal must have two qualities ; first, she must be gentle,

that a lady could drive her, and second, she must be perfectly sound, to which defendant replied, she had both qualities. The next day defendant brought his animal around, when the plaintiff asked whether the mare was sound, to which the defendant replied that he had owned her three years, and she was perfectly sound. They then traded; the plaintiff then said that if the animal was perfectly sound he was satisfied. The defendant then took the mare and colt away.

The plaintiff testified in his own behalf as follows: On the fifth day of November, 1883, the defendant, J. J. Lynes, came to the door of his office and stated that he understood that plaintiff had a mare and colt that he wanted to swap for a good family horse. Plaintiff replied that he had, and asked what sort of an animal defendant had to swap. He said he had a good mare that he wanted to trade for a mare and colt; that he was intending to raise some stock; that he had a pasture suitable and he wanted to raise a colt. Plaintiff said he was not wanting to trade for any other purpose than to get rid of the trouble of the colt, and wanted the value of his mare and colt in a good family horse, and stated to the defendant that there were two requisites necessary in the horse he wanted—it must be perfectly sound, and perfectly gentle, so that his wife could drive it without danger. Defendant replied that he had owned his mare for three years, and that there never had been anything the matter with her; that she was perfectly sound, and that as to her qualities, she was perfectly gentle; that his invalid daughter, who could not get in or out of the wagon without help, was in the habit of driving her. Plaintiff replied by telling defendant to bring his mare around to his office the next morning, and that plaintiff would bring his mare and colt and meet him at eight o'clock. Defendant brought his mare at the appointed time. Plaintiff looked

at the mare in the street without having her moved, and again repeated to the defendant that the two requisites before stated were absolutely necessary to him, her soundness and perfect qualities. Defendant again stated what he had before said, that there had never been anything the matter with his mare since he owned her for the past three years, but that on reflection, she had at one time had an attack of colic produced by eating a ile of sour bran that he had put out for his cows, but with that exception there never had been anything the matter with her since he owned her, and that she was perfectly sound. The parties then traded even and plaintiff's wife drove off the mare, and defendant took the mare and colt; that the same evening the mare was driven to plaintiff's place of business by Tom Harmon after the plaintiff, and in going home limped all the way; that she had brought plaintiff to and from the office each week day from that time until the day of the trial and had never trotted a step without limping; that immediately on the day after the swap, plaintiff instituted inquiry as to who defendant was, and where he lived, and as soon as he could ascertain, which was in a day or two, he sent for defendant, who wrote to him that he would call at noon to see plaintiff, which writing was as follows:

"Mr. Hammond:

"I will call at your office to-morrow at 12 o'clock to see you in reference to our trade.

"Yours truly,

"J. J. Lynes."

In a day or two he came, when plaintiff informed him that his mare was permanently lame, and that he must take her back and bring back plaintiff's mare and colt. Defendant said he would call again the next day, but the plaintiff being called off the next day, could not meet him,

but wrote him a note offering to return his mare, and demanding a return of plaintiff's mare and colt.    Defendant replied in a note declining to swap back.

The reply written to plaintiff by defendant is as follows :

" ORLANDO, FLA., Nov. 23, 1883.

"MR. HAMMOND :

"In reply to your note of the 23d, I made a fair trade with you when we traded ; we never traded on conditions, if either of us wished to trade back.   I never make such trades.  I consider we traded for better for worse.  If you had come back that day we could have made other arrangements, but as I have been to all the expense and trouble, I could not think of trading back.   And further, I don't want no law suits with you, and you could not expect me to trade for your convenience at my expense.

"Yours,        J. J. LYNES."

"P. S. : I saw Mr. Whidden ; he said he wanted your mare ; if you will see him you can get a good horse for her."

The plaintiff offered Dr. R. M. Dickenson as a witness to prove by him that of his own knowledge, the mare traded by the defendant to the plaintiff was lame prior to the 9th of November, 1883, (being the day the trade was made.)   To the admission of such evidence the attorney for the defendant did then and there object.   The judge sustained the objection, and delivered nis opinion as follows :

"No evidence was admissible to prove lameness in the horse, and that no evidence to prove that the defendant knew the horse to be lame before he traded was admissible, and that he would allow no evidence to prove fraud in an action of replevin ; that the only question for the jury, and that plaintiff could prove, was, did the defendant get lawful possession of the horse ; that replevin was not the

proper action of plaintiff, and that when a man trades horses with another he is bound."

To this opinion and ruling of the court the plaintiff excepted. Plaintiff then offered to prove by Thomas Harmon that he had attended to and driven said mare since she had been in possession of plaintiff and that her "daily condition was one of lameness from the day the plaintiff had gotten her." This evidence was excluded for the same reasons assigned by the court as above given, and the ruling was duly excepted to.

The plaintiff then offered Dr. S. P. Mull, a veterinary surgeon, as a witness, and offered to prove by him that prior to November 9, 1883, the defendant had requested him to doctor the mare in question for lameness. The attorney for the defendant objected to such evidence on the ground "that no evidence of fraud was admissible, and that the plaintiff could not enter into the question of lameness; that he was bound to know whether the horse was sound or not when he traded for it."

The court sustained the objection to the evidence so offered and an exception to the ruling of the court was taken by plaintiff's attorney.

The law controlling this case is as follows:

"A sale of goods obtained by fraud on the part of the purchaser works no absolute change of property, while the goods remain in the hands of the purchaser. The seller in such a case may revoke the sale and recover the goods." "A misrepresentation by the vendor, in regard to a material fact which operated as an inducement to the purchaser, upon which the purchaser had a right to rely, and by which he was actually deceived and injured, is a fraud, and confers upon the purchaser the right to avoid the contract whether executed or executory." Bigelow on Fraud, 401–3. "When a sale is procured by fraud, no title passes.

to the vendee." Root vs. French, 13 Wend., 570 ; Ash vs. Putnam, 1 Hill, 302, and cases cited ; see also Stephens vs. Orman, 10 Fla. 10 ; Acker vs. Campbell, 23 Wend., 372 ; Cary vs. Hotailing, 1 Hill, 311 : Olmstead vs. Hotailing, 1 Hill, 317.

" A sale of goods, obtained under false and fraudulent representations, may be avoided by the vendor, and he may insist that no title passed to the vendee, or any person taking under him, other than a *bona fide* purchaser for value and without notice, and in such case the seller may maintain replevin or trover for his goods." 5 Waits, A. & D., 459 ; Thurston vs. Blanchard, 22 Pickering, 18 ; Buffington vs. Gerrich, 15 Mass., 156 ; see also Hancock vs. Tucker, 8 Fla., 435 ; Wells on Replevin, §§318, 319, 420, and cases cited ; Kimball vs. Cunningham, 4 Mass., 502 ; 3 Am. Dec., 230 ; Ayers vs. Hewitt, 19 Me., 281 ; Peak vs. Cogborn, 50 Ga., 562.

Such being the rule of law, the plaintiff had a right to examine the witnesses offered by him to show the facts in regard to the alleged fraud. If a false and fraudulent representation avoids a sale, and the vendor has a right to a recission of the contract, upon the proof of such fraudulent representations, the right to such proof on the trial is unavoidable. The court, in refusing to hear the evidence offered by the plaintiff to prove such frauds, certainly erred.

The question for the jury to decide was not whether the defendant got possession of the mare and colt, but whether that possession was lawful, that is, not tinctured with fraud or false representations. Lawful possession is not acquired by a possession tainted with fraud ; such possession gives no title to the property. The court erred in excluding the evidence offered by the plaintiff, and in adjudging that he would hear " no evidence to prove fraud in an ac-

tion of replevin; that replevin is not the proper action of plaintiff, and that when a man trades horses he is bound."

No question is raised in regard to a tender of a return of the property received by the plaintiff upon the trade. If there was, the letter of the defendant to the plaintiff which is in evidence, and dated November 23d, together with the evidence of the plaintiff himself, would render such tender unnecessary. In that letter the defendant says: "I made a fair trade with you when we traded. We never traded on conditions if either of us wished to trade back. I never make such trades. I consider we traded for better for worse. * * * I could not think of trading back," &c. This evidently is intended to advise the plaintiff that he will not return the mare received from him, and is in effect a waiver of tender, even if one was necessary. Tibbs and Clarke vs. Timberlake, 4 Littell, Ky., 13.

The property was present, the plaintiff did not drive the mare, but took her in exchange for his mare and colt, relying upon the representations made by the defendant, which he offered to prove were false and fraudulent.

After a careful examination of the record in this case, we have come to the conclusion that the evidence offered by the plaintiff, of fraud in the sale of the mare, made by the defendant at the time of the trade, should have been admitted, and that the court, upon hearing the motion for a new trial, should have granted the same. Therefore the judgment is reversed and a new trial awarded.