By the Court, Cowen, J.
Dawmas held his firm out to the plaintiffs as of ability to pay, when he probably knew it to be insolvent. A purchase, with intent not to pay, is such a fraud as will avoid the sale, (Bristol v. Wilsmore, 1 Barn. & Cress. 514; Kilby v. Wilson, Ry. & Mood. N. P. Rep. 178, 181;) and if the plaintiffs had a right to set up the fraud as against the defendant, the question should have been submitted to the jury.
When a sale- is procured by fraud, nd title passes to the vendee. (Root v. French, 13 Wendell, 570.) The vendor still retains his legal right in the goods, unless, after discovering the fraud, he assent to and ratify the act of sale positively, or by such delay in reclaiming the goods as would authorize a jury to infer assent. Either will, in connection with the original transaction, be deemed equivalent to a subsequent independent act of sale. But, in the case at bar, the goods were immediately reclaimed; and if the sale were fraudulent, the legal right remained in the vendors, the same as if the goods had *been tortiously taken from them, without color or pretence of a sale. It is said in Root v. French, to be a general rule, that a person who has no title to property, can convey none; but it is put» as an exception, that a third person ■ may acquire a good title from a fraudulent vendee, by giving him valqe for the *306 property, or incurring some responsibility upon the credit of it, without notice of the' fraud. Such an exception was established in Mowrey v. Walsh, (8 Cowen, 238.) How that would now be treated, were the matter res nova, might perhaps, admit of doubt. It is conceded, even in Mowrey v. Walsh, that the fraudulent purchaser obtains no title, and to this, Bristol v. Wilmore, (1 Barn, & Cress. 514,) is cited as in point. The right of the bona fide purchaser from him, is put on a superior equity. This is the only instance, I suspect, if we except Parker v. Patrick, (5 T. R. 175,) in which a supervening equity has been allowed to overcome a legal right to a chose in possession; and the latter may now be considered as overruled in England. (Peer v. Humphrey, 2 Adolph, & Ellis, 495. 4 Nev. & Man. 430.) The doctrine is vindicated in Root v. French, on its analogy to the bona fide purchase of a bill of exchange. Biit that rests on a notion peculiar to commercial la>v. Such a purchase passes the interest in the bill, even though it were stolen, or otherwise tortiously obtained. Mowrey v. Walsh has been followed in Massachusetts, (Rowley v. Bigelow, 12 Pick. 307,) and, for aught I know, in other states; but applying its principle to sales of choses in possession generally, would substitute the exception for the rule. Nor am I, by any means, prepared to admit, what was said in M’Carty v. Vickery, (12 John. Rep. 348,) that a sale, procured by fraud, even divests the possession, so as to deprive the vendor of his action of trespass or replevin. I do not admit, that, as there said, the sale changes the property. It remains in the ven.dor; and nothing is better settled, as a general rule, than that the absolute property-man retains the constructive possession, which is sufficient to sustain an action of trespass. (Thorp v. Burling, 11 John. Rep. 285. Putnam v. Wiley, 8 id. 433. Aikin v. Buck, 1 Wend. 466. Root v. Chandler, 10 id. 110.) “ The universal and fundamental principle of our law of personal property,” says Terplanck, senator, (Saltus v. Everett, 20 Wend. 275,) “is, that no man can be divested of his property without his own consent; and, *307 consequently, that even the honest purchaser under a defective title cannot hold against the true proprietor.” And it appears • to me the learned senator is right in setting down Mowrey v. Walsh, with its kindred cases, as furnishing the solitary exception—the single instance in which our law divests the title to a chose in possession without the owner’s consent or default. (Vid, also Hoffman V. Carow, 22 Wendell, 318.) Mowrey v. Walsh is an anomaly; for there is no general principle in the law, that the equity of a bona fide purchaser from one destitute of title, shall overrule the prior legal right of the owner,. To say that he is in fault, by parting with the possession—and " therefore, of the two innocent men, he,ought to suffer—would authorize any one to purchase even from á bailee. But such is not the rule. It is the contrary, viz. that, as between two equally innocent persons claiming either a legal or equitable right, Ms right which is prior in time, shall prevail. Beside, it is not true of one who has been fraudulently led to part with . his possession, that this is his fault. It is but Ms misfortune. The rule that, of two imiocent persons, he who has parted with the possession of his property must yield to a bona fide purchaser from the man to whom such possession is confided, has hardly ever been applied, except' when the owner' either transferred the legal title with the possession, reserving or raising a trust, or furnished such unequivocal indicia of absolute ownership with the possession- as to mislead the purchaser. The latter advancing his money, and taking without notice of the trust, or in confidence of appearances, shall then hold. In the first case, the legal -right is allowed to prevail against the equitable; and in the latter, the original owner is estopped to gainsay the language held by the indicia of ownership. In the first, the legal right is allowed to override the lurking equity; in the latter, the owner is himself forbidden to practice a fraud.
The right of the plaintiffs, therefore, being clearly es- - tablished by the general doctrine of the law, it behooved the defendant to bring himself, at least within the excep *308 tion recognized by Mowrey v. Walsh, which we do not intend to question so far as it applies to the case of a bona fide purchaser. It is supposed that he did bring himself within that exception, by proving that lie sold the goods to bona fide purchasers. However that might be if these purchasers were defendants, it is a sufficient answer that this action is", against" the sheriff, and not against his Vendees. And Mowrey v. Walsh itself concedes, that a man who purchases goods with intent never to pay for them, acquires no 'stich right as the sheriff can take in execution against him. Such was the exact point in Bristol v. Wilsmore. Such, too, was Tamplin v. Eddy, cited iri a note to Mowrey v. Walsh. It is said that, in both the sheriff had notice of the fraud before he sold. But no adjudged case makes that distinction in his favor. Mowrey V. Walsh comes short of it; because, if that case be maintained at all, it can only rest1 on the idea of protection, personal to Some purchaser/who makes an actual advance on the credit of the .goods without notice. It is not necessary to say, whether the purchasers at the sheriff’s sale come within the protection afforded by that case. If they do, it imparts none to the sheriff. No doubt he acted in moral good faith: but this never ■has been received as his protection for seizing the goods of one man under an execution against another. In Bristol v. Wilsmore, Abbott, Ch. J. Said, á purchase of goods with a preconceived design of not payibg for them, would vitiate the sale, and prevent thé property from passing. (Vid. also Stephenson v. Hart, 4 Bing. 476.) And in Root v. French, Savage, Ch. J. speaks according to both principle and authority when he says—“ A fraudulent purchaser of goods acquires no title as against the Vendor, and has ho interest which can be seized on execution.” (Allison v. Matthieu, 3 John. 238. Van Kleef v. Fleet, 15 id. 151. Buffington v. Gerrish, 15 Mass. Rep. 156, 7, 8. Abbotts v. Barry, 5 Moore, 98, 102, Dallas, Ch. J.) The case of Buffington v. Gerrish intimates a distinction between the sheriff levying, and persons who purchase bbna fide at 'the sheriff’s sale. To *309 say that the protection of the latter, however, even if admissible should operate ex post facto, so as to purge the conceded wrong of the sheriff, would, I suspect, be treading on ground entirely new.
My conclusion, therefore, is, that the case was not such as to shut out the question of fraud; and that this should have been submitted to the jury.
Other views were presented at the trial, assuming that the jury might find against the charge of fraud. One of these was that, before the levy, enough was done under the head of stoppage in transitu, to take away the sheriff’s right. I doubt whether such a head belongs to the case. The measure of stoppage in transitu, is adverse to the vendee; (Long on Sale's, 325, Am. ed. of 1839;) whereas, in the case at bar, the vendors’ acts of reclamation were all done in concert with the vendees, or rather with Mrs. Raoul, one of the vendees, who must be taken as the representative of both. This Supersedes the necessity of inquiring whether the vendors’ acts were equivalent to an actual stoppage, or whether, ■ if they were, they could avail as such, against the levy and sale.
But the question of re-conveyance, or rescission, does arise; and we are of opinion that a rescission of the-sale, valid as against the defendant, was clearly established by the proof. Mrs. Raoul’s letter and order for the goods in favor of the plaintiffs, were not only written and sent, but actually received by the plaintiffs, before the levy was made; and one, if not more, of the boxes belonging to the parcel sold, was probably detained in pursuance of the order. But independently of such actual detention of any part of' the goods, the letter and order of Mrs. Raoul, and the actual acceptance of her proposition by the plaintiffs, of all which there is no dispute, theniselves worked a complete rescission of the contract. That this is so, may be seen by the case of Atkin v. Barwick, (1 Strange, 165,) ’which decides even considerably more than is necessary for the present plaintiffs. In that case, the goods sold and sent by the vendors actually reached the hands of the ven *310 dees; but the latter being satisfied they could not pay, delivered them to one Penhallow, to be redelivered to the vendors. Shortly after the delivery to Penhallow, the vendees wrote to their vendors, stating their inability, and expressing an unwillingness that the goods should go to pay their creditors. This letter was sent two days after they had become bankrupts ; though the goods had been received and' delivered to Penhallow some time before, Non cónstat¡ but Penhallow was a mere stranger to the vendors, and not their agent; and they got no notice of the delivery to him, till after the vendees’ bankruptcy. They then assented. All the judges held that the property in the goods passed back to the vendors, from the time when they were delivered to Penhallow, subject to the dissent of the vendors; the debt due from the vendees for the goods being a sufficient consideration. This case is stated and much commented upon by Mr. Lawes, in his Treatise on Charter Parties and Stoppage in Transitu, (p. 544.) The result of his remarks is, that the case had been often questioned as to its reasons and extent, but never had been overruled; nor had it ever been denied that, from the time of the notice' reaching the vendors, and their assent, there was either a complete resale, or rescission, or refusal by the vendees to accept. Call it which you please, the effect is the same. In one case the property of the goods is revested in the vendors; in the other, it never was divested. And it has long been positively settled, that the vendee’s consent to restore the goods, and the vendors’ consent to receive them, revest the property in the vendors so as to avoid the effect of any subsequent seizure at the suit of creditors, (Lawes, ut supra, 550.) This; and even more, was distinctly held in Salte v. Field, (5 T. R. 211.) Indeed, all the judges there cite and approve the case of Atkin v. Barwick. In England perhaps, a doubt of these cases might be raised on the statutes of bankruptcy, which, in their spirit, are adverse to a preference among creditors. (2 Kent's Comm. 551, 3d ed. Lawes, ut supra, 549.) But no such principle exists here.
*311 There must be a new trial, therefore, for the purpose of submitting the question of fraud to the jury, and giving effect to the reeission, provided the proof shall be, on the new trial, as if stands now upon the bill of exceptions.
New trial granted.