## KINGSBURY *vs.* SMITH.

It is not sufficient, to entitle the party proposing to take a deposition, to the use of the deposition, that a notification to the adverse party of the caption should contain merely the name of the justice of the peace before whom the deposition is to be taken, and the day, hour and place, of the caption, as, by the terms of the statute, is required ; but it must, in addition thereto, state such other facts as are calculated reasonably to inform the party to be notified, of the action in which the depositions are intended to be used ; and, consequently, must, with reasonable precision, indicate the persons who are the parties to the action.

A. M. K., of H., by his guardian, I. K., of H., commenced an action against S., of H.   A notification of the caption of a deposition was addressed to S., of H., which contained the name of the justice before whom the deposition was to be taken, and stated the hour and place of taking the same, and described the form of the action truly, as well as the term of the court at which the action was to be tried ; and then proceeded to state thus : " in which plea, A. M. K., of H., a minor under the age of 21 years, who sues by his guardian, I. K. of H. ;"—*Held*, that the notification was sufficient.

A fraudulent purchase of personal chattels, accompanied with delivery, is not void, but voidable only at the election of the vender ; and, until the sale is avoided, the vendee has full power to make a valid sale of the chattels to a *bonâ fide* purchaser, having no notice of the fraud.

It is sufficient, to enable such subsequent purchaser, without notice of the fraud, to maintain the title to the chattels conveyed to him, as against the party defrauded by his vender, that some portion of the consideration was paid at the time of the purchase.

A fraudulent purchaser of a chattel is not a competent witness for his vendee of the same chattel, in an action brought by such vendee against the vender of such purchaser, to recover the value of the chattel ; the vender having re-possessed himself of the chattel, and the question at issue being the validity of the title undertaken to be conveyed to the plaintiff in the action, by the witness.   In such

case the interest of the witness is not balanced equally between the parties. In case of the failure of success on the part of the defendant, the witness would be liable for the value of the chattel only. If the plaintiff's title fail, the witness, as vendor and warrantor of the title, would be liable for the necessary expenses of the action, in addition to the value of the chattel.

K. purchased a chattel of C., who previously purchased and got possession of it from S. by fraud. The consideration paid by K., was the discharge of a pre-existing debt against C. and the sale and delivery of an overcoat to C., at the time of the purchase of him. In an action of trover, by K. against S., who had repossessed himself of the chattel;—*Held*, that the value of the chattel, and not the value of the overcoat, was the true measure of damages.

TROVER, for a three year old colt. It appeared that the colt was owned by the defendant, and that, on the 29th of October, 1838, a sale of said colt was made by the defendant to one William H. Chandler, in consideration of two notes received of said Chandler, one for $30 in cash, and the other for $10 in shoe making, both payable in January, then next;—that, on the same day, said colt was conveyed by said Chandler to the plaintiff, in payment in part of a precedent debt due from said Chandler to the plaintiff, and in part for a consideration paid by the plaintiff at the time of said purchase, which was an overcoat, furnished by the plaintiff to Chandler, with a knowledge that Chandler was about to abscond.

It was contended by the defendant, at the trial, that the sale from him to Chandler was obtained by fraudulent pretences, and was void ; and that the plaintiff had knowledge of the fraudulent nature of said purchase at the time he bought of said Chandler, and that therefore his title was void.

The defendant further contended, that whether the plaintiff had such knowledge or not, no title passed to Chandler on account of the fraudulent nature of his purchase, and that therefore no title could pass from him to the plaintiff.

It appeared in evidence that Chandler, for a few weeks before purchasing the colt, had bought articles to a large amount of different individuals, with a design, as was alleged, of absconding and avoiding payment for them. The colt was purchased on the 29th of October by Chandler, he

saying that he wanted a colt for use—that he had hay to keep him on—that he should take him to his brother's to be kept, who lived within a few miles—that he would pay in part in shoe making—and took at the time a measure for a pair of shoes to be made the next Wednesday, and gave his notes for said colt, payable, $30 in cash and $10 in shoe making, in January, then next.

The said Chandler took the colt and went directly with him to Vermont, sold him there the same night to the plaintiff, and absconded that night.

It also appeared in evidence, that the defendant took the colt from the plaintiff the day after the plaintiff received it from Chandler, on the ground that it was obtained from him by Chandler fraudulently, and that he avowed the same when the colt was demanded of him, April 9, 1839.

On trial of said action, the deposition of said William H. Chandler was offered by the plaintiff. Objection was taken to the sufficiency of the notice, but the notice was held sufficient; to which ruling the defendant excepted.

The portions of the notice upon which the objection is based are as follows, viz. :

" To Asahel Smith, of Hanover, in the county of Grafton and state of New-Hampshire, yeoman :

You are hereby notified that one or more depositions will be taken before John W. Simpkins, esquire, one of the justices of the peace," &c. &c., " to be used at the court of common pleas, next to be holden at Plymouth, in the county of Grafton and state of New-Hampshire, on the first Tuesday of November next, in a plea of the case, then and there to be heard and tried, in which plea Andrew M. Kingsbury, of Hanover aforesaid, a minor under the age of 21 years, who sues by his guardian, John Kingsbury, of said Hanover, yeoman," &c. &c.

He further excepted to said deposition, for the reason that said Chandler was an incompetent witness, being the warrantor of the property to the plaintiff ; but the plaintiff con-

tended that the interest of the witness was equally balanced betwixt the parties, he being alike liable to both. The defendant then produced the notes of said Chandler, given to him for the colt, and cancelled them. The court admitted the deposition, to which the defendant excepted.

There was evidence tending to show that the plaintiff had knowledge of a fraudulent intent on the part of Chandler, in his purchase of the colt from the defendant.

The court instructed the jury, that if Chandler obtained the property from the defendant, intending, by the means made use of, to get it into his possession and then run away with it, designing never to pay for it, it was a fraud upon the defendant, and avoided the sale as betwixt the parties to it ; and farther, avoided the sale as regarded any one else who was cognizant of the facts, and subsequently undertook to purchase it ; but that the plaintiff, if he purchased for the consideration before stated, and was ignorant of Chandler's fraud in procuring the colt, would be entitled to hold it.

A verdict was returned for the plaintiff, and the defendant moved to set the same aside, for the reason of alleged error in the rulings of the court relating to the sufficiency of said notice, and the competency of Chandler, the witness ; and because the court charged the jury, that if the plaintiff was ignorant of any fraud on the part of Chandler in obtaining the colt, he might hold it against the defendant, although the pretended sale from the defendant to Chandler was fraudulent.

*Duncan*, for the defendant. 1. We contend that the objection to the deposition of Chandler was well founded. No sufficient notice of the taking of the deposition was given to the defendant. The notice did not state who was the plaintiff in the action.

2. Chandler was an incompetent witness, and his deposition for that reason was inadmissible. He was interested to give evidence in favor of the plaintiff. The contract be-

tween Chandler and the defendant for the purchase of the horse, was either void or voidable, and the defendant, as soon as he knew of the fraud, rescinded the contract and repossessed himself of the property. The rescinding of the contract discharged the liability of Chandler to the defendant altogether. His only continuing interest or liability was to the plaintiff.

3. The charge of the court was erroneous. The consideration paid was insufficient to enable the plaintiff to hold the colt. The only consideration that passed from the plaintiff to Chandler, was the discharge of a preëxisting debt, excepting something to assist him to abscond. The overcoat was the only consideration except the discharge of the debt.

The jury were misdirected, inasmuch as they were told, in effect, that the plaintiff, if entitled to recover at all, was entitled to recover the value of the colt instead of the value of the overcoat. He cited upon the foregoing points, *Rowley* vs. *Bigelow,* 12 *Pick. R.* 307 ; *Seaver* vs. *Dingley,* 4 *Greenl.* 306 ; *Thurston* vs. *Blanchard,* 22 *Pick.* 18 ; *Hale* vs. *Smith,* 6 *Greenl.* 416 ; *Scott* vs. *McLellen,* 2 *Ditto* 199 ; 2 *Kent's Com.* 74 ; *Gilbert* vs. *Hudson,* 4 *Greenl.* 345 ; *Root* vs. *French,* 13 *Wend.* 570 ; *Buffington* vs. *Gerrish,* 15 *Mass.* 156 ; *Stevens* vs. *Austin,* 1 *Met. R.* 557.

*Bell,* on the same side. 1. The notice was insufficient. A notice must go beyond the express terms of the statute. It must state the parties and the court. In this case, it did not state who the parties were. On appearance at the place of caption, we could not claim for neglect of the other party to appear. Here was no notice, containing what the statute requires.

2. Moreover, Chandler was interested, as vender, as to the damages, or as to the damages and costs. The plaintiff meets this view of the case, by showing an equal amount of notes given to the defendant, or claims so to do. But the notes were substantially cancelled at the time when the defendant

re-took the horse from the plaintiff, and that rescindment of the sale was reäffirmed on the 9th of April, 1839, at the time when the plaintiff demanded the colt of the defendant. Rescinding the contract goes to the whole, the notes and the sale.

3. One of two honest men must suffer in this case. In such case, the jury should be left to judge, upon all the circumstances of the case, of the fairness of the transaction. They should have been told that they must find the purchase by the plaintiff to be *bona fide*, in order that the plaintiff should be entitled to recover. The court, however, substantially told the jury, that the passing the overcoat constituted a good consideration, and entitled the plaintiff to a recovery. But we say, if any part of the consideration was antecedent to the purchase, the plaintiff is thereby chargeable with notice of the fraud.

*Quincy*, for the plaintiff. We contend that the notice was sufficient, and in compliance with the provisions of the statute regulating the taking of depositions. It contains the particulars required by the statute; and substantially, although not, perhaps, in the very best form, states who are the parties to the action in which the depositions were to be used. The defendant could not have been misled as to the action or the parties.

We say Chandler was not interested. His interest was balanced. The purchase was on a credit, and the notes given for the price of the colt to the defendant were outstanding, and unpaid. By cancelling the notes at the trial, they were not destroyed. Besides, at the time when the deposition was given, they were not cancelled. They were cancelled at the trial, to create an interest; that was the only purpose. The rescindment of a contract may take place, as between the parties to it, so as to affect them, or any one standing on their title merely, as prior creditor, but not so as to affect a subsequent purchaser or creditor. The defend-

ant could not rescind the contract, unless he put the plaintiff in as good condition as before the purchase.

The plaintiff in this case had no notice of the fraud of Chandler, in fact, nor is he chargeable with such notice upon the circumstances of this case. He paid a portion of the consideration at the time of the purchase. The charge of the court was, in all respects, correct.

In support of the several positions taken, were cited, *Rowley* vs. *Bigelow*, 12 *Pick.* 307 ; 1 *Greenl.* 376 ; 4 *Mass. R.* 405 ; 2 *Pick.* 184 ; 4 *Greenl.* 345 ; 14 *Wend.* 31 ; 13 *Ditto* 570 ; 11 *Ditto* 533.

Woods, J. We will first enquire as to the sufficiency of the notification to Smith, of the caption of the deposition of Chandler, used on the trial of this cause. It is contended, on the part of the defendant, that the notification was wholly insufficient, inasmuch as the same did not, as he alleges, point out the parties in the suit ; or, in other language, the notice did not specify, with proper precision, the suit in which the deposition taken was intended to be used. And, undoubtedly, if the notification were thus defective, such defect would constitute a valid objection to the use of the deposition, and form a proper ground upon which to set aside the verdict. The statute provides, " that the party proposing to take a deposition, shall, a reasonable time previous to the taking of the same, cause a notification in writing, signed by some justice of the peace in this state, to be delivered to the adverse party, or left at his usual place of abode ; and in such notification shall be expressed the name of the justice of the peace before whom such deposition is to be taken, and the day, hour, and place of taking the same."

Looking to the purposes of the notification, and the objects to be attained thereby, it cannot well be doubted that it was the intention of the legislature that the notification should not only contain the matters specified in the statute, but that it should also give information of the action in the

trial of which the deposition proposed to be taken is intended to be used. In fact, the notice required by the statute is not only to be a notice of the fact that some deposition or depositions are to be taken, but also a notice of the purpose of the depositions, and of the action in the trial of which they are to be used when taken; a notice, showing to the party entitled to it that he has an interest in the use to which the depositions are intended to be applied.

It is clear, we think, that a notification, in order to its sufficiency as such, must plainly indicate the action, and, of course, with reasonable precision must designate the parties to the action in which it is intended that the deposition proposed to be taken shall be used. The question then is, did the notice in the present case substantially convey that information to Smith? Did it reasonably inform Smith that the deposition was designed to be used in the action, Kingsbury *vs.* Smith? or, was it so wanting in that information that it was calculated to mislead Smith, and to leave him in any reasonable doubt as to the action in which the deposition was intended to be used, or as to his interest in the taking of the deposition?

The notification was addressed to the defendant, contained a true description of the form of the action, and of the term of the court at which the action stood for trial. And the plaintiff was set up in the notification, as having some relation and some connection with the action; and although it does not in terms describe him as being the plaintiff in the action, yet it is stated, that in the action in the trial of which the depositions were to be used, the plaintiff sues by his guardian, John Kingsbury.

The notification, then, as it appears, was addressed to the defendant, and informed him that the plaintiff sued in the action in which the deposition was to be used; described the form of action truly, and the term of the court at which the action was to be tried, and failed only to state in terms that Smith was the defendant and that Kingsbury was the plaintiff.

But what else could have been understood, from the language of the notification, by the defendant, than that the deposition proposed to be taken was to be used in this action. We think that the notification plainly and fairly carried home that information to the defendant, and that its peculiar, or, perhaps I may say, somewhat unusual form, could not in any manner have misled the defendant as to the action in which the deposition was designed to be used. The objection, then, based upon the supposed insufficiency of the notification, cannot prevail.

A farther objection to the verdict, urged by the defendant, is, an alleged error in the instructions of the court to the jury. The instructions complained of were, " that if the plaintiff, for the consideration stated in the case, purchased the horse, ignorant of the fraud of Chandler, that the plaintiff was entitled to hold the horse thus purchased." That consideration was the discharge of a preëxisting debt due to the plaintiff from Chandler, in part payment, and the delivery of an overcoat to Chandler by the plaintiff, for the residue of the price of the colt, at the time of the purchase. The substance of the charge was, that if the plaintiff purchased *bona fide*, and for a valuable consideration of Chandler, who had the possession of the horse at the time, such a purchase of the horse passed the title to the plaintiff, notwithstanding the vender of the plaintiff had no sufficient title as against the defendant, by reason of fraud. The question raised upon the charge of the court is one which has been often considered, and would seem to be well settled upon the authorities.

*Thurston* vs. *McKown*, 6 *Mass. R.* 428, was an action upon a promissory note, by the indorsee, who had purchased it *bona fide*, and for a valuable consideration, of a fraudulent indorser, against the maker. Parsons, C. J., in delivering the opinion of the court, says, " The question upon the merits of the case, is, whether the loss shall fall on the *bona fide* purchaser of the note, or on the maker, who was defrauded.

And it is settled law, that of two innocent parties, in a case like this, the loss shall fall on the maker of the note. The indorsee gave credit to his name, and on this credit he paid a valuable consideration. The maker suffered himself to be overreached, and by his own inattention, or negligence, or undue confidence in the payee, the note has been negotiated, and has honestly and fairly come into the possession of the plaintiff. On equitable, as well as legal principles, the maker must bear the loss arising from his own negligence or improper confidence, and not the indorsee, to whom no fault or indiscretion can be imputed by the promiser."

And in *Somes* vs. *Brewer*, 2 *Pick.* 184, where a grantee obtained a deed of land by fraud and imposition upon the grantor, and without consideration, and entered under the deed, which was duly acknowledged, and afterwards conveyed the land to a *bona fide* purchaser for a valuable consideration, without notice of the fraud, it was held that such purchaser had a valid title against the first grantor. And Parker, Chief Justice, in the opinion says : " There could be no security of titles, if a purchaser from one actually seized and possessed, with an apparently lawful title existing on the public records, he having no knowledge of a concealed defect in the title of his grantor, should be liable to be defeated of his title by proof of fraudulent acts of his immediate or remote grantor, of the existence of which he had not even a suspicion." " And there is not a single case at law or equity where a *bona fide* purchaser has been deprived of his title by proof of fraud practiced by his grantor upon the person of whom he purchased."

*Rowley et al.* vs. *Bigelow et al.*, 12 *Pick.* 307, was trover for 627 bushels of corn. Martin, the immediate vender of the defendants, got possession of the corn by means of a fraudulent purchase of the plaintiffs, and the corn was shipped and consigned to the defendants, with other corn, for sale on the shipper's account ; and, on being advised of which, the defendants had accepted a bill for $1.000, at ten days

sight, in payment of the same, and paid the same at maturity. A verdict was taken for the defendants, and sustained by the whole court. Shaw, Chief Justice, delivered the opinion of the court. He says, " The evidence clearly shows that there was a contract of sale, and an actual delivery of the goods, by their being placed on board a vessel pursuant to the order of Martin. The contract and delivery were sufficient in law to vest the property in Martin, and make a good title, if not tainted with fraud. We take the rule to be well settled, that when there is a contract of sale, and an actual delivery pursuant to it, a title to the property passes, but voidable and defeasible, as between the vender and vendee, if obtained by false and fraudulent representations. The vender, therefore, can reclaim his property as against the vendee, or any other person standing upon his title, but not against a *bona fide* purchaser, without notice of the fraud." " The ground of exception in favor of the latter is, that he purchased of one having a possession under a contract of sale, and with a title to the property, though defeasible and voidable as between the parties to the original sale and purchase, on the ground of fraud ; but as the second purchaser, without fraud, and without notice of the fraud of the first purchaser, he takes a title freed from the taint of fraud."

In *Parker* vs. *Patrick*, 5 *T. R.* 175, where goods were obtained from the defendant by false pretences, and were afterwards pawned to the plaintiff, for a valuable consideration, without notice of the fraud, and on conviction of the person who obtained them, the defendant got possession of the goods again, it was decided that trover would lie by the pawn-broker to recover the value of the goods of the defendant. In the last case, the principle upon which the judgment proceeded is not stated.

Upon the cases cited it would seem clear that the charge to the jury was entirely correct. Upon the finding of the jury, no fraud in the purchase is imputable to the plaintiff,

nor any knowledge of the fraud of Chandler. A valuable consideration was paid, by the cancellation of the debt and the delivery of the coat ; and Chandler was, at the time of the purchase by the plaintiff, in possession of the horse, having purchased the same, and having obtained a voidable title at least thereto from the defendant. This was a case, then, of a *bona fide* purchase for a valuable consideration, without notice to the purchaser of the fraud of his vender, who was in fact clothed at the time with the possession, and the actual title of the property which he had fraudulently purchased of the owner. Indeed, all the ordinary evidence of title, usually attending property, was in Chandler in this case at the time of the purchase. The circumstances existing at the time of the purchase of the plaintiff were calculated to mislead the plaintiff as to the rightful owner of the horse. All the usual indices of title in Chandler accompanied the property at the time of the purchase of the plaintiff, by means of which the plaintiff was led to make the purchase of Chandler, who had in fact no lawful title.

The defendant, by reason of the sale to Chandler and the delivery of the horse to him, furnished Chandler with the means of deceiving the plaintiff. If either, then, was in fault, it was the defendant rather than the plaintiff. And it is a well settled rule of law, applicable in a large class of cases, that in the case of two innocent persons, if loss comes it must fall on him who, through negligence, or carelessness, or inadvertence, is the occasion of the loss sustained. See the authorities before cited. In this case, though unintentionally, the defendant's acts were the occasion of the loss, if loss should finally fall any where.

It has been urged by the defendant, that inasmuch as the consideration for the purchase was in part the mere discharge of a precedent debt, the property did not pass to the plaintiff by the purchase from Chandler, and that this case forms an exception to the general rule. This view of the case, however, cannot be sustained. Should it be holden,

that so far as that part of the consideration is concerned, the plaintiff cannot be said to have lost any thing by reason of the purchase, still the principle that if loss falls, it must fall on the party in fault, applies in all its force in this case. Loss must fall on the plaintiff, to the extent of the value of the coat, if he fails to hold the property in the horse. To that extent, at least, the loss is the result of the acts of the defendant. He then has been the occasion of that loss, while the plaintiff has occasioned no loss either to the defendant or to himself.

The question is not one depending upon the amount or magnitude of the loss, but is to be sustained by him who has occasioned the loss, whether small or large. The loss, then, as we hold, being occasioned by the defendant, gives the plaintiff the superior equity, as against the defendant; and the plaintiff, upon the authorities, and upon every sound reason, is, in our opinion, entitled to hold the property of the horse as against the defendant.

It was contended at the argument that the rule of damages given to the jury at the trial was erroneous : that the true rule of damages in the case was the price of the overcoat instead of the price of the colt.

But this view cannot be sustained. The title to the colt vested in the plaintiff by the purchase from Chandler. The colt was the plaintiff's. If, then, the property of the colt was in the plaintiff, and the defendant converted it to his own use, we know of no principle of law that would forbid a recovery of its value by the owner in an action of trover.

A still farther objection to the verdict is urged, viz., that Chandler, the witness, was interested in the event of the suit, and so was incompetent to give evidence ; that he was interested in the success of the plaintiff.

This exception, we are all of opinion, was well taken, and is sustained. His interest was not equally balanced, as contended by the plaintiff. If the plaintiff should succeed, the witness would be bound to the defendant only for the value

of the horse; if the defendant should succeed, he would be bound to the plaintiff, as warrantor of the title, not only for the value of the horse, but also for the reasonable costs attending this litigation to determine the right of the plaintiff to the property of the horse. Had Kingsbury retained the possession of the horse, and had Smith brought his action against Kingsbury, to recover the value of the horse, no doubt can be entertained that, in the event of his failure of success in his defence, the costs sustained by Kingsbury, in such necessary defence of his title, would constitute one item of the damages to which he would be entitled in an action upon the implied warranty of Chandler of the title of the horse.

*Staats* vs. *The Executors of Ten Eyck*, 3 *Caines' Rep.* 111, (a leading case on the subject,) was an action founded upon the covenants of the testator, contained in his deed; one being in effect a covenant that the testator was seized in fee, and had good right to convey; and the other, that the grantee should hold the land free from any lawful disturbance or eviction. It was therein decided, that the consideration paid, and interest thereon from the date of the purchase of the land, and the costs sustained in the action of ejectment for the recovery of the same, including reasonable counsel fees, as well as those which are taxable, constituted the true measure of the plaintiff's damages.

So, also, in *Pitcher* vs. *Livingston*, 4 *Johns.* 1, which was an action for a breach of the covenants of seizin and of quiet enjoyment, a similar rule of damages was recognized.

*Waldo* vs. *Long*, 7 *Johns.* 173, was an action of covenant, brought on the covenant against incumbrances. It was holden in that case, that the bills of cost which the plaintiff incurred, and became liable to pay in the action of ejectment against him, were a proper item of the damages occasioned by the incumbrance, which the plaintiff was entitled to recover.

*Bennet* vs. *Jenkins*, 13 *Johns.* 50, was an action of cov-

enant on the covenants in a deed containing the usual full covenants. The testimony showed a breach of the covenants of seizin and for quiet enjoyment. In that case, the costs of the ejectment against the grantee were determined to be an item of damages, covered by the covenants in the deed.

*Sumner* vs. *Williams*, 8 *Mass.* 162, was an action brought upon the covenant of warranty in a deed of land. The deed contained the other usual covenants, and the plaintiff's intestate had been evicted.

It was determined by the court that the true measure of damages was the consideration paid for the land, and interest from the time of the payment, together with the expenses incurred in defending the action brought against said intestate. The court said, " We are all of opinion that the plaintiff is entitled to recover the expenses which have been incurred in defending against Dudley's suit, because we think those expenses are inseparably connected with the plaintiff's claim of indemnity ; and it would be too much to demand of the grantees in such a case, that they should be holden to decide at their peril the validity of the title set up in opposition to the title which the grantors undertook to convey."

In *Armstrong* vs. *Percy*, 5 *Wend.* 535, it was decided that the measure of damages in an action brought for a breach of an implied warranty of title in the sale of a horse, is the price paid, and interest thereon, and the costs recovered against the purchaser or his vendee, in case of a suit by the owner and notice to the vender. It was there said, however, that the costs of the defence are not recoverable in such a case. In support of the latter position, the case of *Blasdell* vs. *Babcock*, 1 *Johns.* 517, is cited, as well as the case of *Lewis* vs. *Peake*, 7 *Taunt.* 152. But no such question was made in either of those cases, and no reason is assigned for the opinion, except that such costs had not before been allowed.

In *Leffingwell* vs. *Elliot*, 10 *Pick.* 204, it was holden

that if the grantee of land with warranty, being evicted by a paramount title, extinguishes such title, he is entitled to recover, in an action upon the warranty, the amount paid by him to extinguish such title, as well after as before the commencement of the suit, together with a reasonable compensation for the trouble and expense to which he may have been put in procuring such extinguishment, but cannot recover for money paid for advice and services of counsel.

*Swett* vs. *Patrick*, 12 *Maine R.* 9, was an action founded on a breach of the covenant of warranty in a deed of lands. In that case, it was decided that the true measure of damages, where there has been an eviction by judgment of law, is the value of the land at the time of the eviction, and the necessary expenses incurred in defending the suit, including the fees paid to counsel.

So, also, *Smith* vs. *Compton*, 4 *B. & A.* 407, decides, that in an action for the breach of covenant for good title to convey, the plaintiff is entitled to recover fees paid to counsel, as a part of the damages sustained.

*Pitkin* vs. *Leavitt*, 13 *Vermont R.* 379, was an action of covenant for the breach of the covenant of warranty in a deed of land. Upon action brought by the plaintiff against one Robert Spencer, to recover the possession of the land, the action failed by reason of the insufficiency of the title derived from the deed of the defendant, and judgment was rendered in favor of Spencer for costs. The plaintiff in this action had judgment for his damages, including the legal costs, and other necessary expenses of the action against Spencer.

*Haynes* vs. *Stevens*, 11 *N. H. Rep.* 28, was an action for a breach of the covenant in a deed against incumbrances. The land at the date of the deed was in fact incumbered by a highway; and the plaintiff, by the representations of the defendant, that the land was not thus incumbered, had been induced to commence an action against persons using the way, in which action the plaintiff had been defeated. It

was held that the plaintiff was entitled to recover the costs of that suit, as part of the damages sustained by the breach of the covenant.

The principle deducible from the cases cited would seem to be, that the grantee in an action upon a covenant of warranty, express as in a deed, or implied as upon the sale of personal property, is entitled to recover, as part of his damages sustained by reason of the failure of the title conveyed, the reasonable and necessary expenses incurred in a proper course of legal proceedings for the ascertainment and protection of his rights under the purchase, as well as a reasonable compensation for his trouble and expenses to which he may have been put in extinguishing a paramount title.

And it seems to us, that there can be no sound distinction between the case in which the expenses are incurred in the necessary and proper prosecution of a suit for such ascertainment and protection of the purchaser's rights, and the case of a defence made for the same purpose.

In the case under consideration, it would, in our view, fall little short of absurdity to hold that if the plaintiff had kept possession of the horse, and the defendant had brought suit, the plaintiff would be entitled to recover, as damages in a suit against Chandler on the implied warranty of title, the expenses of the defence ; and at the same time to hold that when the defendant had got possession of the horse, and the only means left the plaintiff for the ascertainment and protection of his rights is the very suit he has brought, he would not be entitled, in an action on the warranty against Chandler, to recover the expenses of the present suit, properly and necessarily incurred, in the event of a failure of success, by reason of a failure of the title conveyed to him by Chandler. Such a doctrine, making such a distinction, we think cannot be sustained upon sound reason, or upon well considered decisions, which go to establish the right of a recovery of the costs and expenses, as clearly, we think, in the one case as in the other. See the cases before

cited. We hold, then, that Chandler was interested at the time he gave his deposition, as well as at the time when it was introduced in evidence, in the event of this suit; that his interest was in favor of the success of the plaintiff who called him, and that the exception to his competency was well taken; and that for that reason the verdict must be set aside and a

*New trial granted.*