FARLEY & A. v. LINCOLN.

51  577
69  367
51  577
70   38

S. obtained goods of the plaintiffs by means of a fraudulent sale, and under such circumstances that they were entitled as against him to treat the transaction as wholly void. Directly after getting the goods into his possession, S. made an assignment of all his property to the defendant, under the provisions of ch. 126, Gen. Stats., who thereupon took possession of the same, including the goods in question. *Held*, that the plaintiffs might recover the goods in an action of replevin against the assignee.

REPLEVIN, by Farley, Amsden & Co. against John G. Lincoln, to recover certain goods and merchandise in the possession of the defendant.

The plaintiffs, who are wholesale merchants in Boston, claim that the goods in question were fraudulently purchased from them by one A. B. Sanborn, a trader in Suncook, N. H., on April 18, 1870, upon thirty days' credit, with intent to cheat them, and under such circumstances as entitled the plaintiffs, as against said Sanborn, to treat the transaction by which they were obtained as wholly void, and to reclaim the property. After said goods were thus obtained, they were immediately sent to said Sanborn's store in Suncook; and on April 27, 1870, he made an assignment of all his property, under the provisions of chapter 126 of the General Statutes, to the defendant, who immediately took possession of the same, including the goods in question. A demand was made upon said Sanborn and the defendant, on May 3, 1870, both of whom refused to give up said goods; whereupon this action was brought to recover the same.

*Tappan & Mugridge*, for the plaintiffs, cited 1 Ch. Pl. 162, and numerous cases in notes; *Johnson v. Willey*, 46 N. H. 75; *Dame v. Dame*, 43 N. H. 39; Ch. Con. 405; Par. Con. 578; *Sanborn v. Coleman*, 6 N. H. 14; *Lovejoy v. Jones*, 30 N. H. 169; *Sargent v. Gile*, 8 N. H. 325; *Galvin v. Bacon*, 2 Fairf. 30; *Nash v. Mosher*, 19 Wend. 431; *Neff v. Thompson*, 8 Barb. 213; *Buffington v. Gerrish*, 15 Mass. 156; *Thurston v. Blanchard*, 22 Pick. 20.

*Marshall & Chase*, for the defendant.

Although it should appear, upon the trial of this action, that Sanborn's purchase of the goods in question was obtained by means of his fraudulent representations to the plaintiffs, yet he acquired thereby a title to the goods, which would be good unless the plaintiffs, after the discovery of his fraud, chose to defeat it by reclaiming them. In other words, his purchase was not *ipso facto* VOID, but only VOIDABLE at the election of the plaintiffs; and if the plaintiffs, after the discovery

of the fraud, saw fit to ratify the sale, or to remain inactive without taking any steps to set it aside, his title to the goods would become indefeasible, as against them. Chit. on Con. (10th Amer. ed.) 430 ; 1 Hilliard on Torts, ch. 1, sec. 16 ; *Masson* v. *Bovet*, 1 Denio 69 ; *Rowley* v. *Bigelow*, 12 Pick. 307 ; *Titcomb* v. *Wood*, 38 Maine 561 ; *Kingsbury* v. *Smith*, 13 N. H. 109.

By Sanborn's assignment to the defendant, the latter acquired as good a title, at least, as Sanborn had. When the goods in question, in connection with Sanborn's other property, came to the possession of the defendant by virtue of this assignment, he had no knowledge of the alleged fraud of Sanborn in their purchase ; and even if he had had such knowledge, he did not know that the plaintiffs would attempt to avail themselves of it to defeat his title to the goods. It is clear, then, that his receipt of the goods under these circumstances was not such *tortious taking* of the same as would render him a trespasser. He had a right to hold possession of the goods until the plaintiffs demanded them of him. Indeed, his duty to his *cestui que trusts* (Sanborn's creditors) required him to do so.

The plaintiffs' demand, and the defendant's refusal to accede thereto, undoubtedly constituted a *conversion* by the defendant of the goods, and rendered him liable to the plaintiffs in an action of trover or *detinue* therefor, if the facts are as the plaintiffs claim, but they did not change the nature of the original taking so as to render him a *trespasser*. 2 Hill. on Torts 218, and note ; 1 Chit. on Pl. 161 ; ditto 172 ; 2 Saund. on Pl. & Ev. 869 ; *Cooper* v. *Chitty*, 1 Burr. 20 ; *Justice* v. *Mendell*, 14 B. Monroe 12 ; *Marshall* v. *Davis*, 1 Wend. 109 ; *Nash* v. *Mosher*, 19 Wend. 431 ; *Prince* v. *Puckett*, 12 Ala. 832. Not being satisfied with the validity of the plaintiffs' claim to the goods, and feeling bound to protect the rights of his *cestui que trusts* therein, he refused to give up the goods ; and if he did wrong in this, it was an error or mistake such as most men of ordinary care and common intelligence might commit, and was not an active and wilful wrong, and so does not make him a trespasser *ab initio*. His refusal did not render him a trespasser *ab initio*. *Taylor* v. *Jones*, 42 N. H. 34, and authorities there cited.

*Tappan & Magridge,* in reply, referred to *Rowley* v. *Bigelow*, 12 Pick. 312 ; *Cary* v. *Hotailing*, 1 Hill 311 ; *Palmer* v. *Hand*, 13 Johns. 434 ; *Robinson* v. *Dauchy*, 3 Barb. 30 ; *Bradley* v. *Obear*, 10 N. H. 477 ; *Root* v. *French*, 13 Wend. 570 ; *Slade* v. *Van Vechten*, 11 Paige 21 ; *Pierson* v. *Manning*, 2 Mich. 446 ; *Matter of Howe*, 1 Paige 125 ; *Peacock* v. *Rhodes*, Doug. 636 ; *Ash* v. *Putnam*, 1 Hill 307 ; *Mowrey* v. *Walsh*, 8 Cow. 238.

LADD, J. Supposing the facts to be as claimed by the plaintiffs, we think they might maintain trespass or replevin against Sanborn for the goods, notwithstanding he came to the possession of them in the first place by means of a fraudulent sale. And this stands well enough,

upon the ground that there never was any real contract of sale between the parties by which the plaintiffs were bound. Sanborn acquired no rights in the property by the form of a sale which was gone through with, and hence his first as well as every subsequent act of dominion over it amounted to a trespass, if the defendant elected so to treat it.

No serious question is made by the defendant's counsel but this would be so ; and it is admitted further, that, upon a demand and refusal, the plaintiffs might maintain trover or detinue for the goods against this defendant. But it is insisted that, inasmuch as it does not appear that the defendant was a party to Sanborn's fraud, or had knowledge of it, his taking by assignment from Sanborn cannot be regarded as wrongful, although Sanborn had no title, and therefore that the present action will not lie against him. This is the important question in the case, and if it were to be decided upon authority alone, it would undoubtedly present considerable difficulties. See *Barrett* v. *Warren*, 3 Hill 350, and *Stanley* v. *Gaylord*, 1 Cush. 536. In these two cases the authorities on both sides of the question are collected, and the whole subject very ably discussed. The New York court came out one way, holding that trespass would not lie against a person who comes to the possession of goods by delivery, and without fault on his part, *e. g.*, an innocent bailee of the wrong-doer, COWEN, J., dissenting ; while the Massachusetts court held exactly the contrary, WILDE, J., dissenting.

To maintain trespass or replevin, there must be a wrongful taking ; and the question is, whether the taking by the defendant here was wrongful, in a legal sense, as against the plaintiffs. At the time of the assignment the plaintiffs were the absolute general owners, and were entitled to the immediate possession of the goods. The assignment passed no title, and conferred no right upon the defendant in respect of the goods as against the plaintiffs, for the obvious reason that Sanborn had no right or title in them as against the plaintiffs which he could confer upon anybody. This being so, the first act of possession exercised by the defendant over them was inconsistent with and in derogation of the plaintiffs' right. Absolute ownership draws possession after it. If, then, the defendant's act in taking the possession was an interference with the plaintiffs' right of actual possession growing out of their ownership, it was in legal effect a disturbance of their constructive possession.

The defendant's act in assuming dominion over the property was none the less an invasion of the plaintiffs' right, and none the less a trespass, because he did not intend a wrong, or know that he was committing one. An encroachment upon a legal right must constitute a legal wrong ; and it is familiar law, that intention is of no account in a civil action brought by one man to recover damage for a wrongful interference with his property by another. The law gives the plaintiff compensation for the injury he has sustained, whether the defendant intended such injury or not. Indeed, a large proportion of trespasses, especially to land, are doubtless committed through inadver-

tence or mistake, without wrongful intent, and without knowledge on the part of the wrong-doer that he has overstepped his right. '

How does this case differ in principle from that of a person who, under a mistake as to the location of the boundaries of his land, encloses a piece of adjoining land of which the real owner has never had actual possession, and cultivates it in the mistaken belief that it is his own ? One act is undoubtedly as free from the taint of moral wrong as the other. In both alike there is only a disturbance of a possession purely constructive. The only distinction is, that in one case the subject is land, while in the other it is a chattel ; and I do not see that this makes any more difference than if the property interfered with were in one case a cow, while in the other it was a horse.

In *Stanley* v. *Gaylord*, before cited, the case of *Hyde* v. *Noble*, 13 N. H. 494, is quoted as an authority fully sustaining the doctrine there laid down. *Hyde* v. *Noble* was trover by the owner of a cargo of lumber against Noble and another, who had bought and taken the delivery of a portion of it from the plaintiff's bailee while transporting it under a contract from Hallowell and Gardiner in Maine to Weymouth in Massachusetts. In delivering the opinion of the court, PARKER, C. J., says,—
" The purchase by the defendants, taking possession as they appear to have done, and holding it as their own property, was a conversion. They received the possession from one who had no authority to deliver it to them, under a sale which purported to vest the property in them ; and they, by the purchase, undertook to control it as their own property. This was an assumption of power over it, inconsistent with the rights of the plaintiff. Purchasing. the property from one who had no right to sell, and holding it to their own use, is a direct act of conversion, without any demand and refusal : their possession was unlawful in its inception, 'by reason of the want of authority in Kenniston to make the transfer. It is only where a party obtains the possession lawfully, that it is necessary to show a demand and refusal." The same thing in substance has been said in several other cases in this State. *Doty* v. *Hawkins*, 6 N. H. 247 ; *Lovejoy* v. *Jones*, 30 N. H., at p. 169 ; *Cooper* v. *Newman*, 45 N. H. 339, and authorities cited.

The facts stated in *Hyde* v. *Noble* show that there was a demand and refusal before the commencement of the '.suit ; but that case has been constantly referred to, as well in this State as in other jurisdictions, to the point broadly laid down in the opinion of Chief Justice PARKER, that trover without a demand lies in favor of the owner of a chattel against one who has come to the possession of it by purchase from one having no right to sell ; and it would doubtless be a surprise to the profession to learn that such is not the law here. We think it is the law, and that it rests upon reasons quite satisfactory and sound. *Parsons* v. *Webb*, 8 Greenl. 38 ; *Galvin* v. *Bacon*, 2 Fairf. 30 ; *Stanley* v. *Gaylord*, 1 Cush. 536 ;—and see the able and instructive dissenting opinion of COWEN, J., in *Barrett* v. *Warren*, 3 Hill, at p. 351. But it is very obvious that there was no conversion in the case of *Hyde* v. *Noble*, unless the original taking was a conversion ; and that taking

was not a conversion unless it was wrongful. If, therefore, it was not wrongful, a demand and refusal would have been necessary before trover could be maintained. But "whenever the taking of goods is wrongful, trespass, replevin, and trover without a demand are concurrent remedies for the owner, if he has the right of immediate possession." METCALF, J., in *Stanley* v. *Gaylord*, at p. 545, citing Wilkinson on Replevin 2; 7 Johns. 143; 1 Chit. Pl. 176; 2 Saund. 47 *k*, note. That being so, the doctrine of *Hyde* v. *Noble* is decisive of the present case; for, according to that case, trover without a demand would lie here, and therefore the plaintiffs might bring either of the concurrent remedies, trespass or replevin, at their election.

It is undoubtedly settled that, inasmuch as a fraudulent sale is voidable only, the vendor cannot set it aside to the injury of third persons who have made expenditures under it, on the supposition that it is binding. And so a purchaser for value, without notice from the fraudulent vendee, will acquire a good title. *Grout* v. *Hill*, 4 Gray 369; *Trull* v. *Bigelow*, 16 Mass. 406; *Buffington* v. *Gerrish*, 15 Mass. 156; *White* v. *Garden*, 10 C. B. 919; *Root* v. *French*, 13 Wend. 570; *Mowrey Walsh*, 8 Cow. 238. But no such question arises here. The defendant was not a purchaser, and had made no expenditures under the fraudulent sale. At the utmost, his rights in respect to the property could not be larger than those of an attaching or judgment creditor. And the cases all are, that such creditor acquires no title that will hold against the true owner, the vendor. *Load* v. *Green*, 15 M. & W. 216; *Bristol* v. *Wilsmore*, 1 B. & C. 514; *Van Cleef* v. *Fleet*, 15 Johns. 147; *Mowrey* v. *Walsh*, 8 Cow. 238; *Root* v. *French*, 13 Wend. 575; *Buffington* v. *Gerrish*, 15 Mass. 156. " An assignee takes the thing assigned, subject to all the equity to which the original party was subject." Ld. MANSFIELD, in *Peacock* v. *Rhodes*, Dougl. 636.

We have not thought it necessary to go into a minute and extended discussion of the question raised in this case. The authorities to which reference has been made furnish an ample and exhaustive review of the whole subject, and all the authorities. From a careful examination, we are brought to the conclusion that the taking by the defendant was in the eye of the law wrongful, and a disturbance of the plaintiffs' constructive possession; and, therefore, that, upon the facts claimed, the action may be maintained.

<em>Case discharged.</em>